**C. M. CLARK INSURANCE AGENCY, INC., Appellant,**

v.

**David O. MAXWELL, Appellee.**

**SAFEGUARD MUTUAL INSURANCE COMPANY, Appellant,**

v.

**David O. MAXWELL, Appellee.**

**Nos. 71–1927, 71–2010.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 9, 1973.

Decided May 30, 1973.

James C. Eastman, Washington, D. C., for appellants. George P. Lamb, Jr., Washington, D. C., also entered an appearance for appellant.

Joseph A. Califano, Jr., Washington, D. C., with whom Charles H. Wilson, Jr., Washington, D. C., was on the brief, for appellee.

Before LEVENTHAL and ROBB, Circuit Judges, and WILLIAM J. JAMESON,* Senior United States District Judge for the District of Montana.

JAMESON, District Judge:

This is a consolidated appeal from orders dismissing plaintiffs' complaints for failure to state a claim. The appellants, Standard Mutual Insurance Company and C. M. Clark Insurance Agency, Inc., asserting claims under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985, and for malicious abuse of process, sought damages and injunctive relief from the appellee, David O. Maxwell, for actions taken by him while Insurance Commissioner of the Commonwealth of Pennsylvania.

The primary question presented on this appeal is whether the District Court erred in dismissing the complaints for failure to state a claim on the ground that the appellee was immune from suit. Since we conclude that appellee was entitled to the protection of official immunity, it is unnecessary to determine the procedural questions presented.[1]

It appears from the complaints and exhibit thereto attached that on April 12, 1967 appellee in his capacity as Insurance Commissioner for the Commonwealth of Pennsylvania, "by authority of Section 502 of the Insurance Department Act of May 17, 1921, P.L. 789, as amended (40 Purdon's Statutes 202)," issued a suspension order declaring Safeguard Mutual Insurance Company "to be in such condition that its further transaction of business will be hazardous to its policyholders, to its creditors, and to the public" and prohibiting Safeguard from conducting further business "without prior written approval of the Insurance Commissioner of the Commonwealth of Pennsylvania." On the same day appellee filed in the Court of Common Pleas of Dauphin County, Pennsylvania a petition for liquidation of Safeguard.

Section 502 of the Insurance Department Act (40 P.S. § 202) provides in pertinent part:

"Whenever any domestic insurance company * * * is found, after an examination, to be in such condition that its further transaction of business will be hazardous to its policyholders, or to its creditors, or to the public * * * the Insurance Commissioner, after examination, shall suspend the entire business of any such domestic insurance company * * *. Upon suspension of any such organization by the Insurance Commissioner * * * he shall after approval of the Attorney General apply to the Court of Common Pleas of Dauphin County * * * for an

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. The court initially entered an order of dismissal in each case because of plaintiff's failure to object to defendant's motion to dismiss within the time allowed by local court rule. Plaintiffs filed motions to vacate the orders "pursuant to Rule 7(b), 12(b)(6) and 56 of the Federal Rules of Civil Procedure." The court treated the filings as motions for relief from a judgment or order under Rule 60 (b) Fed.R.Civ.P. and held that plaintiffs had "not made out a case for excusable neglect" and that after reviewing the "tardily filed opposition" the court was still "of the opinion that the complaint failed to state a claim upon which relief can be granted." We affirm on the second ground. It is accordingly unnecessary to determine whether the district court abused its discretion in failing to find excusable neglect or erred in failing to hold a hearing under Rule 56.

order directing such company * * * to show cause why its business should not be closed, and the Insurance Commissioner should not take possession of its property and conduct its business, and for such other relief as the nature of the case and the interests of its policyholders, creditors, stockholders, or the public may require."

Following an extended hearing the Dauphin County Court denied the appellee's petition for the appointment of a liquidator and granted Safeguard's petition to vacate the suspension order. Commonwealth ex rel. Maxwell v. Safeguard Mutual Insurance Company, 91 Dauph. 305 (1969).

Thereafter Safeguard and its agent, appellant C. M. Clark Insurance Agency, Inc., filed separate suits in the Eastern District of Pennsylvania against appellee as Insurance Commissioner, various members of his staff, and deputy attorneys general of the Commonwealth. The actions were dismissed as to appellee for lack of personal jurisdiction.[2] Subsequently the actions were dismissed as to the remaining defendants under Rule 12(b)(6) Fed.R.Civ.P. on the ground of official immunity. Safeguard Mutual Ins. Co. v. Miller, 333 F.Supp. 822 (E.D.Pa.1971).[3] The Court of Appeals reversed and remanded for further proceedings. 472 F.2d 732 (3 Cir. 1973).[4]

It is well established that judges are immune from liability for damages for official acts within their jurisdiction and that this immunity was not abolished by § 1983. Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).[5] The same is true of legislators for acts within the legislative role. Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951).[6] A like immunity extends to

2. Appellee was no longer a resident of the State of Pennsylvania when the actions were filed, having moved to the District of Columbia. These actions were commenced after dismissal as to appellee in the Eastern District of Pennsylvania, with the complaints in those actions attached as exhibits to the complaints in the District of Columbia.

3. The District Court concluded that while the remaining defendants were not entitled to the absolute immunity of judges and legislators or those acting in a quasi-judicial position they were entitled to governmental immunity for discretionary acts performed in scope of their authority. The court also quoted from the opinion of the Dauphin County court that, "We are satisfied * * * that the Commissioner's action in suspending Safeguard on April 12, 1967 was a prudent one, embarked upon only after a careful examination of such information as was available to him at that time and in the reasonable belief that such action was mandatory upon him in light of section 502 of the statute." 91 Dauph. 305 (1969).

4. Pointing out that "the complaints, while naming the office held by each defendant, do not describe the function, the relationship to the total functioning of the insurance department, or the degree 'of discretion vested in each office", the court concluded that it could not "tell whether their position in the government of the

Commonwealth is analogous to that of the judge held to be immune from suit for damages in Pierson v. Ray, 386 U.S. 547 [87 S.Ct. 1213, 18 L.Ed.2d 288] (1967), or more closely analogous to the law enforcement officers held, in the same case * * * not to be 'immune." The court held further that good faith immunity is a matter of defense.

5. "This immunity applies even when the judge is accused of acting maliciously and corruptly, and it 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.' (Scott v. Stansfield, L.R. 3 Ex. 220, 223 (1868), quoted in Bradley v. Fisher (13 Wall. 335) 349, note, at 350 [20 L.Ed. 646].)" (1872). Pierson v. Ray, supra, 386 U.S. at 554, 87 S.Ct. at 1218.

6. The respondent had sued petitioners alleging that in connection with an investigation by a committee of the California Legislature, of which petitioners were members, he had been deprived of rights guaranteed by the Federal Constitution. The district court dismissed the complaint. The court of appeals held that the complaint stated a cause of action. The Supreme Court reversed, holding that it appeared from the complaint that the petitioners were acting in a field where legis-

other public officials who are performing quasi-judicial functions or whose duties are related to the judicial process. Yaselli v. Goff, 12 F.2d 396 (2 Cir. 1926), aff'd per curiam, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395, involving a Special Assistant to the Attorney General.[7]

Even where public officers are not engaged in performing quasi-judicial functions, they may be immune from liability for their discretionary acts performed pursuant to their lawful authority. This rule was early stated by this court in Cooper v. O'Connor, 69 U.S. App.D.C. 100, 99 F.2d 135, 142, 118 A. L.R. 1440 (1938), an action against the Comptroller of the Currency and other federal officials for allegedly procuring a false indictment of plaintiff, "falsely, maliciously and without probable cause". In holding the defendants immune from liability the court recognized that immunity "has been applied, not only to officials, judicial and quasi-judicial, but to executive officers generally" (listing various officers, boards and commissions), and concluded "that as the acts of appellees were performed in the discharge of their official duties, the motives with which those duties were performed are immaterial * * *."[8]

In Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), an action for libel against the Acting Direc-

tor of the Office of Rent Stabilization, the Court, after referring to the absolute immunity granted public officials whose duties are related to the judicial process, recognized that this privilege has not been "confined to officers of the legislative and judicial branches of the Government and executive officers of the kind involved in *Yaselli*." The Court quoted from its prior opinion in Spalding v. Vilas, 161 U.S. 483, 498–499, 16 S.Ct. 631, 40 L.Ed. 780 (1895), sustaining a plea by the Postmaster General of absolute privilege, where the Court said in part:

"In exercising the functions of his office, the head of an executive department, keeping within the limits of his authority, should not be under an apprehension that the motives that control his official conduct may, at any time, become the subject of inquiry in a civil suit for damages. It would seriously cripple the proper and effective administration of public affairs as entrusted to the executive branch of the government, if he were subjected to any such restraint. * * *" 360 U.S. at 570, 79 S.Ct. at 1339.[9]

Recognizing that "the occasions upon which the acts of the head of an executive department will be protected by the privilege are doubtless far broader than

---

lators traditionally have power to act. 341 U.S. 367, 376–379, 71 S.Ct. 783, 95 L.Ed. 1019.

7. See also Silver v. Dickson, 403 F.2d 642, 643 (9 Cir. 1968), where the court held that members of the California Adult Authority and other state officials, while employed in the processing of applications for parole, were "performing quasi-judicial functions" and "therefore have immunity from suits for damages under the Civil Rights Act".

8. See also Hoffman v. Halden, 268 F.2d 280, 300 (9 Cir. 1959), relying upon Cooper v. O'Connor, *supra*, as a case "widely cited and followed".

9. In further explanation of the reasons for recognizing the privilege, the Court quoted (360 U.S. at 571, 79 S.Ct. at 1339) from Judge Learned Hand:

"It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. * * *" Gregoire v. Biddle, 177 F.2d 579, 581 (2 Cir. 1949).

in the case of an officer with less sweeping functions," the Court stated that it was "not the title of his office but the duties with which the * * * officer * * * is entrusted" which must provide the guide in delineating the scope of his immunity. The Court concluded that the action of the petitioner was "an appropriate exercise of the discretion which an officer of (his) rank must possess if the public service is to function effectively." 360 U.S. at 573–575, 79 S. Ct. at 1340–1341.

Citing Barr v. Matteo, *supra,* this court in Carter v. Carlson, 144 U.S.App. D.C. 388, 447 F.2d 358, 362 (1971), rev'd on other grounds, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973) recognized that in distinguishing "between discretionary and ministerial functions" and in "determining whether a particular governmental function falls within the scope of official immunity," the "proper approach is to consider the precise function at issue, and to determine whether the officer is likely to be unduly inhibited in the performance of that function by the threat of liability for tortious conduct."

■ It is true, as appellants argue, that the doctrine of official immunity should be applied sparingly and that to "hold all state officers immune from suit would very largely frustrate the salutary purpose" of § 1983. Jobson v. Henne, 355 F.2d 129, 133 (2 Cir. 1966).[10] Rather it is necessary to balance "competing considerations" in determining whether particular officers are immune. Dale v. Hahn, 440 F.2d 633, 637 (2 Cir. 1971). This was clearly recognized in Barr v. Matteo, *supra,* the Court calling attention to the conflict between "two considerations of high importance"—the protection of the individual citizen against oppressive or malicious action by governmental officers and the "protection of the public inter-

est" by shielding responsible governmental officers on "account of action taken in the exercise of their official responsibilities." 360 U.S. at 564–565, 79 S.Ct. at 1336. As in Barr v. Matteo, we conclude that the balance here must be resolved in favor of immunity.

■ Appellee was the chief executive officer of the Department of Insurance of the Commonwealth of Pennsylvania, "which is charged with the execution of the laws of this Commonwealth in relation to insurance."[11] The duties, responsibilities and function of the Insurance Commissioner are clearly defined by statute. Upon specified findings he was required "to suspend the entire business" of an insurance company and apply for an order to show cause why the business should not be closed and the Insurance Commissioner take possession of its property and conduct its business. He was required to engage in the fact finding and decision making process and had the sole responsibility of determining, after investigation, whether a suspension order should be issued. While investigation may not be categorized as a judicial function, the role of the commissioner in the issuance of a suspension order—based on a finding of hazard to the public, coupled, as required, with the filing of what amounts to a petition for a court order of liquidation, that assured exposure, adversarial testing, and judicial resolution of the matters underlying the commissioner's determination—may properly be labeled as "quasi-judicial" and an integral part of the judicial process.

Moreover, appellee as the chief executive officer of the Commonwealth's Department of Insurance was performing a governmental function which required the exercise of discretion. In exercising his discretionary function he was acting pursuant to lawful authority. In the performance of that function it is "like-

---

10. Jobson v. Henne is factually distinguishable. It was an action by an inmate of a state mental institution against its officers and psychiatrist on account of their allegedly having subjected the inmate to "involuntary servitude, peonage or slavery".

11. Insurance Department Act of 1921, May 17, 1921, P.L. 789, as amended, 40 P.S. § 41.

ly" that he would "be unduly inhibited * * * by the threat of liability for tortious conduct." Carter v. Carlson, *supra*.

We conclude that appellee is entitled to the protection of official immunity on the grounds that (1) he was an executive officer performing a quasi-judicial function, and (2) he was performing a discretionary act in the exercise of his official duties and pursuant to lawful authority.

Having determined that appellee is immune from suit for the acts alleged in the complaint, the orders of the District Court dismissing the complaints for failure to state a claim may properly be affirmed. Bauers v. Heisel, 361 F.2d 581, 591 (3 Cir. 1966), cert. denied, 386 U.S. 1021, 87 S.Ct. 1367, 18 L.Ed.2d 457 (1967); [12] Tenney v. Brandhove, *supra*.

Affirmed.

---

12. While the Court of Appeals for the Third Circuit held in Safeguard Mutual Insurance Co. v. Miller, *supra*, that the action was improperly dismissed because the functions and "degree of discretion vested" in the offices held by the defendants were not described, it recognized that where the functions are precisely known, as with judges and prosecutors, a decision on the pleadings is proper, citing Bauers v. Heisel. As noted above, the functions of appellee as Insurance Commissioner are precisely defined by statute. The defendants left in Federal court for Eastern Pennsylvania after dismissal as to appellee (see note 2, *supra*) were officials below "cabinet" rank. Their duties and functions were left to development at trial.