## C. M. CLARK INSURANCE AGENCY, INC., Plaintiff,

v.

### George F. REED, Defendant.

## SAFEGUARD MUTUAL INSURANCE COMPANY, Plaintiff,

v.

### George F. REED, Defendant.

### Civ. A. Nos. 71–H–391, 71–H–392.

United States District Court,
S. D. Texas,
Houston Division.

Feb. 7, 1975.

---

Malcolm H. Waldron, Jr., Philadelphia, Pa., for plaintiff.

James Greenwood, III, Vinson, Elkins, Searls, Connally & Smith, Houston, Tex., for defendant.

## MEMORANDUM AND OPINION

CARL O. BUE, Jr., District Judge.

In this action, plaintiffs are seeking compensatory and punitive damages stemming from the suspension of business activity of Safeguard Insurance Company in April, 1967, by the Pennsylvania Insurance Department. Plaintiffs are Safeguard Mutual Insurance Company and C. M. Clark Insurance Agency, Inc., a Pennsylvania corporation organized by persons interested in the welfare of Safeguard Mutual Insurance Company. The defendant is George F. Reed, who was at all times material to this suit chief counsel of the Insurance Department or Insurance Commissioner for the State of Pennsylvania. In their complaints, plaintiffs allege that the defendant, together with seven other officials of the Insurance Department and office of the Attorney General of the Commonwealth of Pennsylvania, conspired to deprive plaintiffs of due process and equal protection of the law by issuing an illegal suspension order that denied Safeguard the right to do business within the State and by committing numerous acts to prevent Safe-

guard from having that order judicially set aside or from commencing business operations. Plaintiffs also seek damages for malicious use and abuse of process. This Court has jurisdiction pursuant to 28 U.S.C. § 1343 and 28 U.S.C. § 1332.

This action is presently before the Court for consideration of the defendant's motion for summary judgment, pursuant to Rule 56, Fed.R.Civ.P. Defendant alleges that he was acting at all times in his official capacity as Chief Counsel of the Insurance Department or as Insurance Commissioner of the Commonwealth of Pennsylvania and that these positions entitle him to quasi-judicial or executive immunity from civil liability. In opposition, plaintiffs deny that the defendant's positions entitle him to absolute immunity. They argue that the defendant should be denied immunity for performing certain discretionary acts with malice and claim that he is vicariously liable for the non-discretionary acts of his agents.

The history of the litigation of this cause of action is somewhat complex. Defendant was originally named along with seven other defendants in a suit filed in the Eastern District of Pennsylvania. Subsequent to the defendant's dismissal, and the dismissal of David Maxwell, defendant's predecessor as Insurance Commissioner, for lack of personal jurisdiction, this suit was filed in the defendant's present domicile. Suit was also filed against Maxwell in the District of Columbia based upon the same cause of action. The Pennsylvania suit was dismissed pursuant to Rule 12 (b), Fed.R.Civ.P., upon the court's determination that the remaining defendants were entitled to governmental immunity and had not acted in bad faith. Safeguard Mutual Insurance Company v. Miller, 333 F.Supp. 822 (E.D.Pa. 1971). This decision was reversed and remanded, however, by the Third Circuit, which held that the decision could not be based upon the complaint alone, as it was insufficient in describing the function of each defendant and thereby providing a basis for the decision of immunity. Safeguard Mutual Insurance Company v. Miller, 472 F.2d 732 (3rd Cir. 1973). That action is currently pending before the Pennsylvania District Court. The action against David Maxwell was dismissed, however, by the District Court for the District of Columbia for failure to state a claim upon which relief could be granted. This dismissal was upheld by the Circuit Court upon a determination that the defendant's position as Insurance Commissioner was one that was entitled to quasi-judicial and executive immunity. C. M. Clark Ins. Agency, Inc. v. Maxwell, 479 F.2d 1223 (D.C.Cir. 1973).

## JUDICIAL IMMUNITY

It is well settled that the absolute immunity traditionally accorded to judges by the common law is viable today and is not abolished by the passage of 42 U.S.C. § 1983. *See* Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Under this doctrine, a judge is not subject to liability for any act committed within the exercise of his judicial function. *Id.* Furthermore, this immunity is said to be "absolute", in that it is applicable even if the actions of the judicial official are taken in bad faith. In addition to judges, this doctrine of absolute immunity has been held applicable to those who function as "quasi-judicial officers", such as prosecuting attorneys. *See* Madison v. Gerstein, 440 F.2d 338 (5th Cir. 1971); Lewis v. Brautigam, 227 F.2d 124 (5th Cir. 1955). Thus, a prosecuting attorney may not be held liable for acts committed while functioning in his official capacity, even if those acts were committed in bad faith. However, this rule is limited in that "a prosecuting attorney, who acts outside the scope of his jurisdiction and without authorization of law, cannot shelter himself from liability by the plea that he is acting under color of office. *See,* e. g., Lewis v. Brautigam, *supra* at 128–129. Futhermore, if a prosecuting attorney enters into a conspiracy with

a lesser official who is not entitled to the immunity of a prosecuting attorney, the former may be held liable for the acts of his non-immune agent. *See* Hampton v. City of Chicago, 484 F.2d 602 (7th Cir. 1973), cert. denied, 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974); Madison v. Purdy, 410 F.2d 99 (5th Cir. 1969); Lewis v. Brautigam, *supra.*

■ In the case under consideration, the Court finds that the defendant, by virtue of his position as Chief Counsel to the Insurance Commissioner, is entitled to assert the immunity applicable to a prosecuting attorney. With regard to the position of Chief Counsel, both parties have stipulated that the written specification for the position of Chief Counsel, which was issued by the Pennsylvania Justice Department and the Office of Administration of the Commonwealth of Pennsylvania, accurately describes the duties of this office. Examples of work performed are described as representing "the department in highly complex and important litigation before trial and appellate courts" as well as representing "the department in important hearings and investigations before administrative tribunals". Furthermore, plaintiff has argued that the Report of the Insurance Commissioner of the Commonwealth of Pennsylvania for the period July 1, 1971, to June 30, 1972, is an accurate description of the functions of the Chief Counsel. This report describes the function of the Chief Counsel as including "initiations of legal proceedings on behalf of the Department," as well as the handling of "regulatory enforcement proceedings" arising from complaints made by the public or from investigations conducted by the Insurance Department. It appears that the Chief Counsel to the Insurance Department is formally designated as an Assistant Attorney General. *See* 71 P.S. § 296. From a consideration of the evidence presented with respect to the motion for summary judgment and in view of the fact that the Insurance Department is charged with the responsibility of bringing legal proceedings against errant insurance companies, *see* 40 P.S. § 202, the Court finds that the defendant was performing the traditional function of a prosecuting attorney with respect to the proceedings brought against Safeguard Mutual Insurance Agency.

■■ Likewise, the Court holds that the defendant was functioning in the capacity of a prosecuting attorney when he was acting as the Pennsylvania Insurance Commissioner. In this regard, the Circuit Court for the District of Columbia found with regard to the Pennsylvania Insurance Commissioner, that

> the role of the commissioner in the issuance of a suspension order—based on a finding of hazard to the public, coupled, as required, with the filing of what amounts to a petition for a court order of liquidation, that assured exposure, adversarial testing, and judicial resolution of the matters underlying the commissioner's determination—may properly be labeled as 'quasi-judicial' and an integral part of the judicial process.

C. M. Clark Insurance Agency, Inc. v. Maxwell, *supra* 479 F.2d at 1227. Because the plaintiffs were parties to the District of Columbia action and had a full and fair opportunity to litigate the issue in that proceeding, they are collaterally estopped from relitigating the issue of the quasi-judicial immunity of the insurance commissioner in this instance. *See* Blonder-Tongue Laboratories, Inc. v. Univ. of Ill. Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); Rachal v. Hill, 435 F.2d 59 (5th Cir. 1970), cert. denied, 403 U.S. 904, 91 S.Ct. 2203, 29 L.Ed.2d 680 (1971); Bruszewski v. United States, 181 F.2d 419 (3rd Cir.), cert. denied, 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950). The Court can find no "overriding consideration of fairness . . . [that] dictates a different result." *See* Bruszewski v. United States, *supra* at 421.

Accordingly, the Court, having determined that defendant Reed is entitled to quasi-judicial immunity, must consider the complaint to determine if the acts of the defendant alleged therein were acts that were within the scope of his official function.

■ It is readily apparent that the defendant was exercising the traditional role of a prosecutor in issuing the Suspension Order of April 12, 1967, and thus beginning the judicial proceeding that it was his responsibility to commence. Accordingly, the defendant is immune for his action in commencing the prosecution of Safeguard Mutual. *See e. g.*, Guedry v. Ford, 431 F.2d 660 (5th Cir. 1970); Haaf v. Grams, 355 F. Supp. 542 (D.Minn.1973). Likewise, the Court finds that no liability can attach to the defendant because he sought the issuance of an order by the Dauphin County Court and the United States District Court enjoining and restraining Safeguard Mutual Insurance Company from transacting business and impounding the companies' books, records, etc. Nor can liability attach to the defendant because he filed a Petition for Liquidation in the Court of Common Pleas of Dauphin County, as he was authorized to do by statute, *see* 40 P.S. § 206; because of his use of discovery procedures; because of his conduct during the trial of Commonwealth of Pennsylvania v. Safeguard Mutual Insurance Company in the Court of Common Pleas of Dauphin County; or because he filed exceptions in that case to the court's order of September 25, 1969. Because these activities are all part of the traditional prosecutorial role, the Court finds that they were within the scope of the defendant's official function while he was serving as Chief Counsel to the Pennsylvania Insurance Department as well as while he was functioning as Insurance Commissioner. Consideration of defendant's motives in this action is irrelevant. Accordingly, the defendant is immune from liability for any cause of action arising from these activities.

## EXECUTIVE IMMUNITY

■ Defendant likewise asserts that he is entitled to executive immunity because the duties of his respective offices required the exercise of discretion. It is well recognized that government officials who exercise a discretionary function are subject to immunity for lawsuits stemming from their official actions. In Spalding v. Villas, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896), the Supreme Court held that the absolute immunity traditionally accorded to judges and legislators was also applicable to cabinet officials. This doctrine was extended by the Supreme Court in Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) to include officials of lesser rank than cabinet members who exercised a discretionary, as opposed to a purely "ministerial" position.

> To be sure, the occasions upon which the acts of the head of an executive department will be protected by the privilege are doubtless far broader than in the case of an officer with less sweeping functions. But that is because the higher the post, the broader the range of responsibilities and duties, and the wider the scope of discretion, it entails.

*Id.* at 573, 79 S.Ct. at 1340. The decision to grant an official executive immunity is a policy decision resulting from the balancing of two considerations:

> on the one hand, the protection of the individual citizen against pecuniary damage caused by oppressive or malicious action on the part of officials of the Federal Government; and on the other, the protection of the public interest by shielding responsible governmental officers against the harassment and inevitable hazards of vindictive or ill-founded damage suits brought on account of action taken in the exercise of their official responsibilities.

Barr v. Matteo, *supra* at 564–65, 79 S.Ct. at 1336.

However, even though a number of judicial decisions had treated executive immunity as absolute, thereby dispelling any consideration of the motives of the official underlying his actions, the Supreme Court in Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), held that executive immunity is qualified in the context of a suit premised upon § 1983:

[I]n varying scope, a qualified immunity is available to officers of the executive branch of Government, the variation dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good faith belief, that affords basis for qualified immunity of executive officers for acts performed in the course of official conduct.

. . . . . .

[Section] 1983 would be drained of meaning were we to hold that the acts of a governor or other high executive officer has "the quality of a supreme and unchangeable edict, overriding all conflicting rights of property and unreviewable through the judicial power of the federal government."

Id. 416 U.S. at 247, 94 S.Ct. at 1692, 40 L.Ed.2d at 103, citing Sterling v. Constantin, 287 U.S. 378, 53 S.Ct. 190, 77 L.Ed. 375 (1932). Accordingly, because the decision in Scheuer required consideration of the motives of an official, as well as the function of his office, prior to granting him executive immunity, it is necessary for the Court to consider (1) if the defendant's various positions with the Insurance Department would entitle him to executive immunity, (2) if he was acting within the scope of these functions and (3) if he was acting reasonably and in good faith.

Under the principles of collateral estoppel, the plaintiffs cannot deny that the Insurance Commissioner of Pennsylvania, if acting in good faith, is entitled to executive immunity in view of the decision in C. M. Clark Insurance Agency, Inc. v. Maxwell, by the District of Columbia Circuit Court. However, even in the absence of that decision, the Court would hold that the duties attendant to that office as set forth by statute would entitle its holder to executive immunity, if he is performing those duties in good faith. See 40 P.S. §§ 41, 202. The public interest in vigorous and prompt action in the regulation of the insurance industry requires that those at the policy-making level of the regulatory agency be free to act without thoughts of personal liability. In this regard, the Court finds that the public interest outweighs those of the individual who may be hurt by erroneous actions of officials done in good faith.

Likewise, the Court finds that the function of the chief counsel to the Insurance Commissioner is a position requiring the utmost use of discretion and cannot be characterized as "ministerial". Both parties have stipulated that the written specification for defendant's position of chief counsel, as prepared by the Justice Department and Office of Administration, is an accurate description of the job that defendant performed. The written specification sets forth examples of the work performed by the chief counsel, which includes rendering legal opinions, advising department heads on proper courses of action and representing the department in complex litigation—all of which involve a broad range of discretion. Because the defendant's function was one intimately involved in the policy making function of the Insurance Department, he is entitled to the same immunity granted the Commissioner when he acts in good faith within the scope of his executive function.

Aside from the activities set forth previously from which the Court has held the defendant is immune by virtue of his quasi-judicial function, the

Court finds that the defendant was acting within the scope of this executive function by issuing or causing to be issued press releases with regard to the Suspension Order, which is specifically required by 40 P.S. § 202; by refusing to authorize certain expenditures of money, which is also specifically authorized by 40 P.S. § 202; and by authorizing examinations of Safeguard Mutual Insurance. However, even though those actions may be subject to executive immunity if defendant were acting in good faith, defendant's motion for summary judgment must be denied as there exists a genuine issue of material fact with respect to whether or not the defendant committed or conspired to commit these acts in bad faith as plaintiffs have alleged in their complaints. Accordingly, resolution of this issue must await trial or the presentation of further evidence by way of additional motions for summary judgment.

### LACK OF IMMUNITY

 Furthermore, defendant's motion must be denied with respect to certain allegations that do not appear to fall within either the doctrine of judicial or executive immunity. These consist for the most part of allegations of unconstitutional searches and the procurement of false testimony on behalf of various witnesses. *See, e. g.,* Hampton v. City of Chicago, *supra.* It appears that trial of this matter must resolve whether these acts were in fact committed by the defendant, whether they fall within one of the above ambits of immunity and if subject to immunity, whether they were committed in good faith.

### SUMMARY

Accordingly, defendant's motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., will be granted only with respect to those acts set forth in the opinion for which the defendant is immune by virtue of his quasi-judicial position. The motion will be denied with respect to the remainder of the acts set forth in the complaint, whether fully within the ambit of executive immunity or without the ambit of either judicial or executive immunity. *See* Rule 56(d), Fed.R.Civ.P. Any further discovery that may be necessary may proceed relative to the remaining issues of fact.