**SAFEGUARD MUTUAL INSURANCE COMPANY**

v.

**Robert A. MILLER, William J. Kuntz, Charles D. Cowley, David P. Trulli, Frederic G. Antoun and Glenn A. Wenrich.**

**C. M. CLARK INSURANCE AGENCY, INC.**

v.

**Robert A. MILLER, William J. Kuntz, Charles D. Cowley, David P. Trulli, Frederic G. Antoun and Glenn A. Wenrich.**

Civ. A. Nos. 71–767, 71–822.

United States District Court, E. D. Pennsylvania.

May 2, 1979.

Oscar N. Gaskins, Philadelphia, Pa., for plaintiff.

Allen C. Warshaw, Deputy Atty. Gen., Harrisburg, Pa., for defendants.

## OPINION

·DITTER, District Judge.

The defendants in this case were employed by the Insurance Department of the Commonwealth of Pennsylvania in the respective capacities of deputy insurance commissioner, deputy attorney general, assistant attorney general, and insurance company examiner. They each played a significant role in the unsuccessful prosecution of the plaintiff insurance company for improper practices. In this civil rights action, plaintiffs seek redress for violations of their constitutional rights that allegedly occurred during that proceeding and the investigation which preceded it. The complaint[1] charges the defendants with various acts, including inter alia, defamation, harassment, trespass, misfeasance and malfeasance. These acts, and many more, were allegedly committed in furtherance of a scheme to deprive plaintiffs of their property without due process of law.

The conflict between the Safeguard company and various Insurance Department officials has now produced at least twelve reported opinions, issued by four different federal courts. See *C. M. Clark Insurance Agency, Inc. v. Maxwell*, 156 U.S.App.D.C. 240, 479 F.2d 1223 (1973); *Safeguard Mutual Insurance Co. v. Maxwell*, 53 F.R.D. 116 (E.D.Pa.1971); *Safeguard Mutual Insurance Co. v. Miller*, 333 F.Supp. 822 (E.D.Pa. 1971), rev'd, 472 F.2d 732 (3d Cir. 1973), on remand 68 F.R.D. 239 (E.D.Pa.1975), 456 F.Supp. 682 (E.D.Pa.1978); *C. M. Clark Insurance Agency, Inc. v. Reed*, 390 F.Supp. 1056 (S.D.Tex.1975); *Safeguard Mutual Insurance Co. v. Pennsylvania*, 329 F.Supp. 315 (E.D.Pa.1971), 372 F.Supp. 939 (E.D.Pa. 1974); *Safeguard Mutual Insurance Co. v. Pennsylvania ex rel. Maxwell*, 313 F.Supp. 888 (E.D.Pa.1970), 321 F.Supp. 996 (E.D.Pa. 1970). The history and facts of this litigation are explained fully in my earlier opinion at 456 F.Supp. 682, 684–85.

On a previous motion for summary judgment, defendants argued that they were entitled to absolute immunity as to all their activities in connection with this case. For the purposes of that motion, I divided the acts charged against the defendants into various categories ·of conduct. I then granted summary judgment on the ground of absolute immunity as to each category that fell within the ambit of traditional prosecutorial activity. 456 F.Supp. at 692–93.

As to the remaining eight categories, however, I concluded that the defendants were entitled, at most, to a qualified immunity. The conduct charged in each of these categories was administrative or investigative in nature, and the defendants would be entitled to immunity only if their acts had been taken in good faith, a determination best made at trial. Summary judgment as to these acts was therefore denied. 456 F.Supp. at 693–94.

Defendants have now renewed their motion for summary judgment on the dual ground that the complaint, buttressed by the existing factual record, fails to state a cause of action under the civil rights laws, and that certain aspects of the complaint are also barred by the applicable statute of limitations.[2] For the reasons that follow,

1. Civil Actions Nos. 71–767 and 71–822 have been consolidated herein. As the complaint in No. 71–822 incorporates the complaint in No.· 71–767 by reference, I will refer to the complaints as one document for convenience.

2. These issues were raised by defendants in their previous motion for summary judgment. ·In reliance on my order of July 13, 1976, however, which limited the summary judgment motion to the immunity issue, plaintiffs' brief did not address the sufficiency of the cause of action or the statute of limitations. I therefore refrained from deciding the present questions at that time. Both parties have now fully briefed the matter on what defendants have styled "Motion to Reconsider Defendants' Motion for Summary Judgment."

this motion will be granted in part and denied in part.

Defendants argue essentially that plaintiffs have charged them with a series of common law torts, and that such allegations do not state a claim for relief under the federal civil rights laws. It is true that as to the categories of conduct that remain a part of this case, the complaint sounds primarily in tort. The following language from my opinion on the previous summary judgment motion explains the substance of the allegations in each of the eight categories:

First, plaintiffs assert that their rights were violated by the defendants' acts in preparing the report of examination of the Safeguard Mutual Insurance Company. The report is alleged to contain numerous errors and misstatements . . . . Secondly, plaintiffs claim that their rights were violated by the defendants' actions in posting insurance company investigators on the plaintiffs' premises for an unreasonably long period of time and directing the activities of these investigators in such a way as to vex and harass the plaintiffs . . . . Third, it is charged that defendants contacted banks and other financial institutions in order to freeze Safeguard's funds and prevent the company from managing its own financial affairs, all without authority or just cause . . . . Fourth, [plaintiffs] charge that the plaintiffs' rights were violated by the defendants' issuance of press releases and communications with media representatives regarding the suspension and injunction orders. Fifth, [plaintiffs] allege that defendants unreasonably refused to authorize certain expenditures on the company's behalf. These included the payment of salaries and credit card bills, as well as various administrative expenses. Sixth, [plaintiffs] charge that defendants directed uniformed police officers of the City of Philadelphia to position themselves on the plaintiffs' premises and to search persons entering or leaving the building, all in an alleged effort to harass plaintiffs and impede their business operations. [Seventh, plaintiffs] charge that the defendants communicated with agents, brokers, and creditors of Safeguard, as well as with other insurance companies, for the purpose of informing these third parties that the company had been suspended because it was insolvent. This is said to have resulted in a loss of insurance protection as well as revenue.

. . . . .

[Finally, plaintiffs] charge the defendants with intimidating and threatening witnesses, as well as misleading the court through false or irrelevant information.

456 F.Supp. at 693–94.

It is defendants' position that while these allegations might present a sufficient claim for relief under state law, they do not rise to the level of federal constitutional violations. Moreover, defendants argue that the Pennsylvania limitation periods applicable to defamation, 12 P.S. §§ 31 and 32, and to personal injury, 12 P.S. § 34, bar any cause of action based on some, if not all, of the above allegations.

Plaintiffs respond that defendants have misconstrued the complaint. Safeguard says that its prayer for relief is based on a theory of civil conspiracy. It is argued that, together with other persons, the present defendants conspired to deprive plaintiffs of their property without due process of law by depleting their resources and destroying their business. The alleged torts enumerated above are said to be merely overt acts in furtherance of the conspiracy. The plaintiffs contend that this states a cause of action under both 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3). Surprisingly, plaintiffs offer no suggestion as to the proper resolution of the statute of limitations issue beyond the following statement: "[I]t is irrelevant that the complaints for defamation, illegal search of plaintiffs' employees and customers, or the false arrest of plaintiffs' officers were not brought within

the statute of limitations." Plaintiffs' Memorandum in Opposition to Defendants' Motion to Reconsider Motion for Summary Judgment, at 4.

## I. *Section 1985(3)*

■ At the outset, it is clear that 42 U.S.C. § 1985(3) has no relevance whatever to this litigation. Plaintiffs' reliance on this statute is totally misplaced. It is firmly established that in order to state a cause of action under section 1985(3), plaintiffs must show a conspiracy motivated by an invidious, discriminatory, class-based animus. *Griffin v. Breckinridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Novotny v. Great American Federal Savings & Loan Association*, 584 F.2d 1235, 1240–41 (3d Cir. 1978); *Jennings v. Shuman*, 567 F.2d 1213, 1221 (3d Cir. 1977); *Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir.), *cert. denied*, 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 492 (1972). Even under the most strained interpretation, the complaint in this case could not fairly be read as suggesting any class-based, discriminatory motive behind defendants' alleged conspiracy. Similarly, no such charge can be found in plaintiffs' brief or proposed findings of fact. Indeed, from the factual record already developed, I am quite satisfied that "the actions which form the basis for this case" most definitely are not "the offspring of a 'class-based invidiously discriminatory animus' within the meaning of the *Griffin* test." *Novotny, supra,* 584 F.2d at 1241. Summary judgment will therefore be granted to defendants on all claims brought under 42 U.S.C. § 1985(3).

## II. *Section 1983*

A very different result obtains as to 42 U.S.C. § 1983. It is with reference to this statute that I must decide the issues posed by defendants, viz., whether plaintiffs have adequately stated a cause of action under the federal civil rights laws, and whether the applicable limitation periods bar any or all of the claims for relief.

■ To set the stage for this inquiry, I will address, as a preliminary matter, a suggestion raised in defendants' reply brief. Expressing some perplexity about plaintiffs' civil conspiracy theory, defendants argue that the very concept of conspiracy is irrelevant to an action under section 1983, except for the purpose of showing state action.[3] This, however, is plainly not the law.

Many federal courts have recognized that a cause of action for conspiracy to violate one's civil rights can properly be maintained under section 1983. Thus, in *Nesmith v. Alford*, 318 F.2d 110 (5th Cir. 1963), *cert. denied*, 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed.2d 420 (1964), the Court of Appeals for the Fifth Circuit explained that while conspiracy is not an *essential* element of a section 1983 action, "it may be charged as the legal mechanism through which to impose liability on each and all of the Defendants without regard to the person doing the particular act." 318 F.2d at 126 (footnote omitted). The Fifth Circuit later relied on this language to support its reversal of a district court holding that a cause of action based on an alleged conspiracy could not be brought under section 1983. *Mizzell v. North Broward Hospital District*, 427 F.2d 468, 472–73 (5th Cir. 1970).

If defendants' argument was correct, conspiracy charges under the civil rights laws would be limited to section 1985(3), and thus, the only actionable conspiracies to violate constitutional rights would be those motivated by a class based discriminatory animus. Such a result is unjustified. In *Blake v. Town of Delaware City*, 441 F.Supp. 1189 (D.Del.1977), Chief Judge Latchum was forced to dismiss the cause of action brought under section 1985(3) because, as in the present case, plaintiff had not alleged any discriminatory motive. This did not require dismissal of the plaintiff's conspiracy claims, however, since

---

**3.** As plaintiffs point out, the state action requirement of section 1983 can be satisfied as to a private person by showing that he conspired with state officials who acted under color of state law. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970); *Jennings v. Shuman, supra,* 567 F.2d at 1220.

"Section 1983 provides a remedy for all violations of rights secured by the Constitution, not only those stemming from class-based discrimination." 441 F.Supp. at 1199. Therefore, the court recognized the existence of a section 1983 cause of action for conspiracy. Id.

Other courts, including the Court of Appeals for the Third Circuit, have similarly recognized this cause of action. See, e. g., *Hazo v. Geltz*, 537 F.2d 747, 749 n. 4 (3d Cir. 1976); *Hostrop v. Board of Junior College District No. 515*, 523 F.2d 569, 576 (7th Cir. 1975); *Jones v. Bales*, 58 F.R.D. 453, 458 (N.D.Ga.1972). See also *Bergschneider v. Denver*, 446 F.2d 569 (9th Cir. 1971); *Lambert v. Conrad*, 308 F.2d 571 (9th Cir. 1962).

■ I hold, therefore, that a cause of action for conspiracy to violate constitutional rights exists under section 1983, and, if properly plead, is available to the plaintiffs in the instant case. Recognizing the existence of a section 1983 conspiracy cause of action is only a preliminary matter, however, and does not end the inquiry. Rather, I must now determine whether plaintiffs have satisfied the elements of the cause of action, and whether any relief can be granted. Therefore, I am presented with three issues: (1) whether plaintiffs have adequately alleged a conspiracy; (2) whether the conspiracy allegations state a cause of action for violation of rights secured by the constitution; (3) whether any or all of the claims for relief are barred by the applicable statute of limitations.

### 1. Adequacy of Conspiracy Allegations

■ To proceed on a conspiracy cause of action, plaintiffs must first allege, with sufficient particularity, the existence of a conspiracy. There must be "allegations of a combination, agreement or understanding among all or between any of the defendants." *Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974). There must be "factual allegations that the defendants plotted, planned, or conspired together to carry out the chain of events." Id.

■ Such allegations are present in the instant case. Paragraph 12 of the complaint in civil action No. 71–767 charges that together with other persons, the defendants "entered into a conspiracy or mesalliance . . . which had as one of its purposes the deprivation of one or more of the plaintiff's constitutionally protected rights." Paragraph 13 sets forth a lengthy and detailed list of specific tortious acts which are expressly alleged to have been committed by the defendants "through their individual and/or joint efforts, in furtherance of their plan, scheme, plot, design, or modis operandi." From even the most casual reading, it is apparent that the complaint sounds in conspiracy. Plaintiffs have adequately alleged, therefore, that the property deprivation of which they complain was both the object and the result of a conspiratorial union on the part of defendants.

### 2. Violation of Constitutional Rights

I have held above that a cause of action for conspiracy exists under section 1983, and that the complaint here sufficiently alleges the conspiracy element. This does not necessarily mean, however, that the complaint states a cause of action under section 1983.

■ Defendants contend that the acts of which plaintiffs complain are merely common law torts, and that the complaint has failed to allege the violation of any right secured by the constitution. It is true that not every violation of local law by state officials intrudes upon a federal right. *Screws v. United States*, 325 U.S. 91, 108–09, 65 S.Ct. 1031, 1039, 89 L.Ed.2d 1495 (1945). Indeed, the Supreme Court has cautioned against interpreting the civil rights laws and the due process clause of the fourteenth amendment as embracing "a body of general federal tort law." *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). It is defendants' view that most, if not all, the allegations in the complaint sound in such torts as defamation, trespass, and interference with business relations. I am urged to hold that while such acts might present a claim for relief under the laws of the Commonwealth

of Pennsylvania, they do not rise to the level of federal constitutional violations.

█ Plaintiffs respond that because they have alleged a conspiracy to violate their civil rights, the tort nature of the underlying overt acts is irrelevant. Their argument seems to suggest that when a complaint sounds in conspiracy, the overt acts it charges are without individual significance. This, however, is plainly incorrect, since in a conspiracy action "it is the acts causing damage to the plaintiff that give rise to liability for damages, not the conspiracy itself." *Hostrop*, supra, 523 F.2d at 576. As the Second Circuit has stated: "The charge of conspiracy in a civil action is merely the string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible for any overt act or acts." *Rutkin v. Reinfeld*, 229 F.2d 248, 252 (2d Cir. 1956), cert. denied, 352 U.S. 844, 77 S.Ct. 50, 1 L.Ed.2d 60 (1956). It follows then that a plaintiff could not transform a mere common law tort action into a federal constitutional case by the simple expedient of alleging that two persons conspired to commit the tort.

It is precisely this deficiency that defendants say is fatal to the cause of action in the instant case. In support of their position, defendants rely heavily on *Paul v. Davis*, supra. There the Supreme Court held that the tort of defamation alone, even when committed by a state official, does not violate the federal constitution.

The plaintiff in *Paul* was included on a flyer sent by two police chiefs to local merchants, alerting the latter of suspected shoplifters. A shoplifting charge was pending against the plaintiff at the time, but it was subsequently dismissed.

The Court held that these facts did not state a cause of action under section 1983. In so ruling the Court noted that the defamation of which plaintiff complained, though committed by state officials, was unaccompanied by any alteration or extinguishment of a right or status that plaintiff had previously enjoyed. Rather, it was a tort *alone*, and as such, it had no constitutional overtones. 424 U.S. at 711–12, 96

S.Ct. at 1165–66. Writing for the *Paul* majority, Mr. Justice Rehnquist distinguished other cases where defamation had given rise to an action under the due process clause because it carried with it an infringement on some legal right or status. Thus, for example, in *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), plaintiff challenged the practice of "posting" whereby the sale of alcoholic beverages to certain persons was prohibited. The defamation was thus accompanied by a deprivation of plaintiff's right to purchase liquor. Similarly, in *United States v. Lovett*, 328 U.S. 303, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946), an act of Congress expressly forbade the payment of salaries to three government employees who had been deemed "subversive." This defamation, therefore, was intimately connected with an infringement on the right to government employment.

█ Thus, in order for defamation to support a cause of action under the due process clause, it must be somehow connected with an infringement of a constitutionally protected liberty or property interest. "These interests attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law . . . ." 424 U.S. at 710, 96 S.Ct. at 1165. Such a protected interest would exist, for example, where the state has recognized the right to operate a vehicle by issuing a driver's license, or where it permits parolees to remain at liberty. 424 U.S. at 711, 96 S.Ct. at 1165. See *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

Defendants point out that a significant portion of the complaint in the instant case is based on the alleged defamation contained in press releases and the Report of Examination. It is argued that under *Paul*, supra, these acts cannot provide the basis for a section 1983 action. Much the same argument is raised as to the allegations of the complaint that are analogous to the state law torts of trespass and interference

with business or contractual relationships. Defendants say that like defamation, these torts do not violate the constitution.

██ Defendants' argument is not persuasive. The constitutional element that was missing in *Paul v. Davis* is pervasively present in this case.

Plaintiffs complain first that they were defamed by false statements in the defendants' Report of Examination and in numerous press releases. But unlike the libel in *Paul*, this defamation did not stand alone. Rather, it was intimately connected with the suspension of plaintiffs' license to engage in the insurance business and with the allegedly malicious attempt to have that license permanently revoked. Moreover, beyond the attempted license revocation, the complaint charges that defendants attempted to destroy the plaintiff companies and prevent them from ever conducting their lawful business.

Surely the plaintiffs had a protected property interest in their right to engage in the insurance business. The state recognized this interest by granting plaintiffs a license and affording them the protection of law in conducting their affairs. It is noteworthy too that this was an extremely substantial interest. Certainly, it was far more substantial than some of the examples relied upon in *Paul*, supra, such as the right to operate a vehicle or hold a government job.

The complaint more than adequately draws a nexus between each of the torts it alleges and the defendants' interference with plaintiffs' property interest. Beyond the defamation, plaintiffs charge that defendants trespassed on their premises, harassed their employees and associates, and interfered with their business and contractual relationships. The complaint specifically alleges that by each of these acts, defendants furthered their efforts to infringe on plaintiffs' right to conduct their business. These were not isolated torts, standing alone. Rather, they were accompanied by the alleged attempt of state officials to deprive plaintiffs of a substantial property interest without due process of law. I hold, therefore, that the complaint adequately states a cause of action for conspiracy to violate civil rights.

Some consideration must also be given at this juncture to several other points raised by defendants which bear on the sufficiency of plaintiffs' cause of action.

First, defendants argue that even if plaintiffs were deprived of a property interest, it was not without due process of law, since prescribed administrative and judicial procedures were followed. The very utilization of these procedures, however, is a part of what plaintiffs challenge. The complaint alleges that defendants initiated the suspension proceeding and its attendant investigation in deliberate bad faith, for the purpose of harassment, and with the goal of destroying Safeguard's business. Surely such actions, if proved, would violate due process. Cf. *Freeman & Bass, P. A. v. State of New Jersey Commission of Investigation*, 486 F.2d 176, 178–79 (3d Cir. 1973).

██ Secondly, defendants suggest that as to one category of conduct charged in the complaint, plaintiffs have no standing. Reference is made here to the sixth category identified earlier. Essentially, the charge in this category is that, acting at defendants' direction, uniformed police officers of the City of Philadelphia positioned themselves on plaintiffs' premises and unlawfully searched persons entering or leaving the building. It is also charged that the police falsely arrested one of plaintiffs' officials.

Defendants argue that plaintiffs have no standing to raise these claims. Plaintiffs have offered no response. I find the defendants' position to be persuasive. It is clear that one may not sue or recover damages for the violation of another's civil rights. *McGowan v. State of Maryland*, 366 U.S. 420, 429, 81 S.Ct. 1101, 1107, 6 L.Ed.2d 393 (1961); cf. *Gilmore v. Utah*, 429 U.S. 1012, 97 S.Ct. 436, 50 L.Ed.2d 632, reh. denied, 429 U.S. 1030, 97 S.Ct. 655, 50 L.Ed.2d 636 (1976). Plaintiffs have offered nothing to show that they were injured by the illegal search and false arrest of third persons.

Defendants also argue that the acts alleged in the eighth category of conduct fail to state a cause of action. Once again, plaintiffs have made no response. In this category, the complaint charges that the defendants committed perjury and conspired to suborn perjury. Defendants correctly point out that such acts do not give rise to a civil cause of action for damages. See *Ginsberg v. Halpern*, 383 Pa. 178, 118 A.2d 201 (1953). Nor, therefore, do they support an action for damages under the civil rights laws. *Bryant v. Commonwealth of Kentucky*, 490 F.2d 1273 (6th Cir. 1974); *Hahn v. Sargent*, 388 F.Supp. 445 (D.Mass.), aff'd, 523 F.2d 461 (1st Cir. 1975), cert. denied, 424 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).

In summary then, I will grant defendants' motion for summary judgment as to the sixth and eighth categories of conduct discussed above, and plaintiffs may not recover damages for injuries arising from these acts. In all other respects, the motion for summary judgment on the ground that the complaint fails to state a cause of action under the civil rights laws is denied.

### 3. Statute of Limitations

The only matter remaining to be determined in this case is the question of which limitations period should be applied. As in any civil rights case, I must apply the limitations period pertaining to actions most closely analogous to the one before me under the law of Pennsylvania. *Henig v. Odorioso*, 385 F.2d 491 (3d Cir. 1967), cert. denied, 390 U.S. 1016, 88 S.Ct. 1269, 20 L.Ed.2d 166, *reh. denied*, 391 U.S. 929, 88 S.Ct. 1814, 20 L.Ed.2d 671 (1968). In doing so, it is to be remembered that this is an action for conspiracy.

To resolve the statute of limitations issue in this case, one might be tempted simply to apply the limitations period properly applicable to each of the overt acts. Certainly, the acts charged in the categories of conduct that remain a part of this case can easily be analogized to various state law torts. Thus, categories one and four pertain to the making of false statements in the Report of Examination and in press releases. 456 F.Supp. at 693. This is analogous, of course, to defamation. Category two alleges that defendants posted insurance company investigators on plaintiffs' premises without plaintiffs' permission for the purpose of harassment. Id. This can be analogized to the tort of simple trespass to property, i.e., trespass *quare clausum fregit*. See *Kopka v. Bell Telephone Co. of Pennsylvania*, 371 Pa. 444, 91 A.2d 232 (1952); *Nido v. Chambers*, 70 Pa. D. & C.2d 129 (1975). Category three charges that defendants contacted various financial institutions in order to freeze plaintiffs' funds. Category five states that defendants refused to authorize the payment of salaries, bills, and other expenses. Category seven alleges that defendants informed various third parties, including agents, brokers, creditors, and other insurance companies, that the plaintiff company had been suspended because it was insolvent, thereby causing plaintiffs to lose both insurance protection and revenue. 456 F.Supp. at 693. The acts charged in all three of these categories are most closely analogous to the state law tort of interference with business and contractual relations, a tort recognized under the law of Pennsylvania. See *Dupree v. Hertz Corp.*, 419 F.Supp. 764 (E.D. Pa.1976); *Loughrey v. Landon*, 381 F.Supp. 884 (E.D.Pa.1974).

Trespass *quare clausum fregit* is expressly included in the six year limitation period of 12 P.S. § 31. Similarly, the same six year period has been held to govern the tort of interference with business and contractual relations. *Dupree*, supra, 419 F.Supp. at 768; *Loughrey*, supra, 381 F.Supp. at 886. The tort of defamation, on the other hand, is subject to a one year limitation period. 12 P.S. §§ 31 and 32.

In a conspiracy action, however, it is incorrect to apply different limitation periods to each of the overt acts alleged. Rather, "[t]he Pennsylvania statute of limitations pertaining to the substantive offense most closely related to that which defendants were alleged to have conspired to commit would govern." *Ammlung*, supra, 494 F.2d at 814.

In essence, this complaint alleges that defendants conspired to prevent plaintiffs from conducting their insurance business. If such a charge is analogous to any state law tort at all, it would be that of interference with business and contractual relations. As noted above, this tort is subject to a six year limitations period. Moreover, it has been held that all actions in trespass not involving bodily injury are governed by the six year period of § 31. *Meyers v. Pennypack Woods Home Ownership Association*, 559 F.2d 894, 902 (3d Cir. 1977). I hold, therefore, that the six year limitations period of 12 P.S. § 31 governs this entire case. In a conspiracy action, the limitations period begins to run from each overt act. *Ammlung*, 494 F.2d at 814–15. The earliest acts alleged occurred in 1967, and the complaint was filed less than six years later, in 1971.[4] Therefore, no aspect of this case is barred by the statute of limitations.

## CONCLUSION

For the reasons expressed above, the defendants' motion for summary judgment will be granted with respect to the plaintiffs' cause of action based on 42 U.S.C. § 1985(3). The motion will also be granted as to plaintiffs' action based on perjury or suborning perjury and on the illegal search and false arrest of third persons. In all other respects, the motion must be denied.

In my previous opinion on defendants' motion for summary judgment, I stated that no evidence would be received at trial regarding any of defendants' acts that were protected by an absolute immunity. 456 F.Supp. at 694. Plaintiffs now argue, however, that even if they cannot recover damages for this conduct, evidence regarding the commission of such acts is still relevant to show the existence of defendants' alleged conspiracy, and to show that the defendants acted in bad faith.

I agree that my previous statement, effectively excluding such evidence, was premature. The resolution of this issue will depend on whether the prejudicial nature of the evidence would outweigh its probative value. Such determinations are best made at the time of trial. Therefore, I express no opinion now on how this matter will or should be resolved.