Franklin R. BLAKE, Plaintiff,

v.

The TOWN OF DELAWARE CITY, Delaware, a Municipal Corporation, Philip Cruchley, Individually and in his capacity as former Mayor of the Town of Delaware City, Delaware, Richard T. Gannon, Robert Janiszewski, and Robert Harrison, Individually and in their capacity as former Council Members of the City Council of the Town of Delaware City, Delaware, Emilie Tugend, Individually and in her capacity as former Mayor of the Town of Delaware City, Delaware, William Press, Lawrence Gicker, Richard T. Gannon, Robert Harrison, and Maurice McCarthy, Individually and in their capacity as Council Members of the City Council of the Town of Delaware City, Delaware, G. W. Griffin, Individually and in his capacity as Chief of Police of the Town of Delaware City, Delaware, David Denick, Individually and in his capacity as Patrolman, Police Department, Town of Delaware City, Delaware, Warner T. Foraker, Kennard Harding, and John F. Boyer, Jr., Individually and in their capacity as members of the Police Advisory Board of the Town of Delaware City, Delaware, James Baker and Nicholas DeLeo, Individually and in their capacity as owners of Baker and DeLeo Auto Parts, Defendants.

Civ. A. No. 76–108.

United States District Court,
D. Delaware.

Nov. 14, 1977.

John B. Kennedy of Kennedy & Kennedy, Wilmington, Del., for plaintiff.

Sheldon N. Sandler of Bader, Dorsey & Kreshtool, Wilmington, Del., for all defendants except James Baker and Nicholas De-Leo.

Morton R. Kimmel of Kimmel & Spiller, P.A., Wilmington, Del., for defendants, James Baker and Nicholas DeLeo.

LATCHUM, Chief Judge.

In this case, the plaintiff, Franklin R. Blake ("Blake"), seeks compensatory and punitive damages in the amount of $2 million dollars for alleged violations of his constitutional rights.[1] The defendants are the Town of Delaware City, eleven individuals who hold or have held positions in the government or on the police force of Delaware City (together with Delaware City, hereinafter collectively referred to as "municipal defendants") and James Baker ("Baker") and Nicholas DeLeo ("DeLeo"), the owners of an automobile parts business. Blake claims that the defendants passed an ordinance prohibiting Delaware City residents from keeping inoperable motor vehi-

---

1. Complaint, Docket Item 1.

cles on their property and three years later enforced that ordinance against Blake, all as part of a conspiracy to "get" him and drive him out of business. The case is now before the court on the defendants' motions for summary judgment.[2]

## I. *Background*

On February 8, 1971, the Mayor and Council of Delaware City adopted Ordinance 2007, which made it a crime to keep an inoperable motor vehicle outside a garage on private property for more than thirty days, "except in commercial automobile storage yards properly licensed by the State of Delaware."[3] Defendant Philip Cruchley ("Cruchley") was mayor at the time and defendants Richard T. Gannon ("Gannon"), Robert Janiszewski ("Janiszewski") and Robert Harrison ("Harrison") were members of the city council. The plaintiff alleges that three other defendants, as members of the Police Advisory Board ("PAB"), advised the city council to enact the ordinance.[4]

After it became effective, the Delaware City Police enforced Ordinance 2007 periodically, but Blake was the first person they arrested under it.[5] The arrest, which occurred on June 29, 1974, culminated a series of events which began in May 1974, when Police Chief G. W. Griffin ("Griffin"), Sergeant David Denick ("Denick") and former Mayor Emilie Tugend ("Tugend"), all of whom have been named as defendants herein, allegedly agreed to start enforcing the ordinance again. Thereafter, Denick and two PAB members, Foraker and Harding, conducted a tour of the Town and compiled a list of violators. These three defendants identified a total of forty-nine vehicles as being in violation of the ordinance; thirteen of these belonged to the plaintiff. Denick then proceeded to notify each of the violators. He testified at his deposition that on June 19, 1974, he gave Blake a written notice of violation and explained Ordinance 2007 to him.[6] Blake denies ever receiving notice of the violation,[7] and for present purposes, the Court will accept his testimony as true. On June 29, 1974, Denick arrested Blake.[8]

Section 5 of Ordinance 2007[9] authorizes the City to cause any vehicles in violation of the ordinance to be removed, provided the owner of the property on which they are situated receives at least ten days notice of the violation. A few days before Sergeant Denick arrested Blake, he made arrangements with Baker and DeLeo to have any cars which remained in violation towed away. Baker accompanied Denick on the date of the arrest and, after Blake had been taken into custody, began towing the thirteen vehicles to his storage yard. Denick instructed Baker to segregate the cars from

2. Docket Items 102 and 103.

3. Docket Item 107A, pp. 1–2.

4. The three PAB members were: Warner T. Foraker ("Foraker"), Kennard Harding ("Harding") and John F. Boyer ("Boyer"). Docket Item 1, par. 18.

5. Denick Dep., Docket Item 104, pp. 14, 38–39; Denick attributed the failure to arrest anyone before June 29, 1974, to the fact that everyone else who had received a notice of violation had voluntarily corrected the problem. *Id.* p. 14.

6. Denick Dep., Docket Item 104, p. 44.

7. Docket Item 1, par. 29; Blake Dep., Docket Item 35, p. 13.

8. Blake also named the members of the Delaware City Council at the time of his arrest as defendants in this action. Blake alleges that the following defendants were council members at that time: William Press ("Press"), Lawrence Gicker ("Gicker"), Maurice McCarthy ("McCarthy"), Gannon, and Harrison. Docket Item 1, par. 19.

9. Section 5 provides:

"The Mayor and Council of Delaware City may, upon ten (10) days written notice to the owner of such a motor vehicle, or upon ten (10) days written notice to the owner of real estate upon which such a vehicle is parked, stored or maintained, cause the same to be removed, the cost and expense of which may be paid by the Mayor and Council of Delaware City and thereafter entered as a lien upon the property upon which said vehicle was stored or upon the property of the owner of said vehicle." Docket Item 107A, p. 1.

the others in Baker and DeLeo's yard and to hold them.[10]

On January 15, 1975, a Delaware Common Pleas Court judge held Ordinance 2007 to be unconstitutional, dismissed the charges against Blake, and ordered the return of all personal property which had been taken from Blake.[11] The City appealed to Superior Court, but the decision was affirmed.[12] More importantly, the defendants never returned the cars to the plaintiff. It now appears that all of the cars were shredded and sold for salvage.[13]

On March 10, 1976, Blake instituted this action for damages against Baker and DeLeo, the town of Delaware City and the other municipal defendants, in both their official and individual capacities. In a confused and poorly drafted Complaint, Blake claims that the defendants, individually and in concert: (1) violated his right to procedural due process by depriving him of his cars and other personal property on June 29, 1974, without notice and an opportunity to be heard;[14] (2) caused Blake's arrest and the seizure of his property and conducted the same "without a warrant, without probable cause, and in an unreasonable manner, thereby violating the Fourth Amendment . . . .";[15] (3) directed Sergeant Denick to arrest Blake pursuant to a warrant which was void because it was based on an unconstitutional ordinance;[16] and (4) "falsely, maliciously, and without probable cause effected a criminal complaint against the Plaintiff" on June 29, 1974, and instituted prosecution pursuant to that complaint.[17]

Originally, the plaintiff based these claims on 42 U.S.C. §§ 1983 and 1985(3) and their jurisdictional counterpart, 28 U.S.C. § 1343(3). Blake later amended his complaint to allege that the matter in controversy exceeded $10,000 and to invoke the Court's general federal question jurisdiction under 28 U.S.C. § 1331.[18]

In addition to the above mentioned federal claims, the Complaint asserts a state law claim for conversion of Blake's personal property against all the defendants. The plaintiff requests that the Court exercise pendent jurisdiction over the conversion claim.[19]

In their answers[20] and memoranda in support of their motions for summary judgment,[21] the defendants have raised numerous defenses including the lack of subject matter jurisdiction, the statute of limitations, and various immunities. These defenses are considered first in relation to the plaintiff's federal law claims and then in relation to his pendent state law claims.

## II. Defenses to Federal Law Claims

### A. Jurisdiction

 It is well settled that a municipality is not a "person" within the meaning of either 42 U.S.C. § 1983 or § 1985. *Monroe v. Pape,* 365 U.S. 167, 187–91, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *United States ex rel. Gittlemacker v. County of Philadelphia,* 413 F.2d 84, 86 (C.A. 3, 1969); *Folk v. Wilson,* 313 F.Supp. 727, 728 (D.Del.1970). More-

---

10. Baker Dep., Docket Item 88, pp. 10, 13–14, 18; Denick Dep., Docket Item 104, pp. 21–22, 59.

11. The Court held the ordinance violated the due process clause in that the period of time provided for removal of the vehicles after notice, thirty days, was arbitrarily short. Docket Item 108A, pp. 8–12.

12. *State v. Blake,* Cr.A. 75–02–0122A (Del.Super., filed July 14, 1975) (letter opinion) (Docket Item 107A, p. 44).

13. Baker testified that he had the cars shredded approximately nine months after he obtained them. Baker Dep., Docket Item 88, pp. 11, 16. He sold them for about $45 each. *Id.*

14. Count I, Docket Item 1, pars. 27–31.

15. Count II, Docket Item 1, pars. 32–34.

16. Count III, Docket Item 1, pars. 35–38.

17. Count IV, Docket Item 1, pars. 39–45.

18. Docket Item 85.

19. Count V, Docket Item 1, par. 51.

20. Docket Items 5 and 9.

21. Docket Items 107 and 109.

over, because an action for damages against municipal officers in their official capacity would be satisfied out of the municipal treasury, Sections 1983 and 1985 and their jurisdictional counterpart, 28 U.S.C. § 1343(3), provide no basis for exercising jurisdiction over any of the individual defendants in their official capacity.[22] *See Monell v. Department of Social Services,* 532 F.2d 259, 264–66 (C.A. 2, 1976), *cert. granted,* 429 U.S. 1071, 97 S.Ct. 807, 50 L.Ed.2d 789 (1977); *Patton v. Conrad Area School District,* 388 F.Supp. 410, 416–17 (D.Del.1975). Accordingly, the federal statutory claims against Delaware City and the other municipal defendants in their official capacities will be dismissed.

■ The plaintiff, however, also relies on this Court's general federal question jurisdiction under 28 U.S.C. § 1331(a)[23] as a basis for his claims that the defendants have deprived him of his constitutional rights. Liberally construed, the Complaint asserts a claim for damages against the municipal defendants directly under the Fourteenth Amendment.[24] It is well settled that this Court presently has *jurisdiction* under 28 U.S.C. § 1331 to hear Four-

teenth Amendment claims for money damages against a municipality. *City of Kenosha v. Bruno,* 412 U.S. 507, 513–14, 516, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Mahone v. Waddle,* 564 F.2d 1018, at 1022 (C.A. 3, 1977); *Gagliardi v. Flint,* 564 F.2d 112, at 115 (C.A. 3, 1977). As the Third Circuit emphasized in the *Mahone* case, however, the jurisdictional issue is separate and distinct from the question: whether the Fourteenth Amendment gives rise to a *cause of action* for damages against a municipality. 564 F.2d at 1022–1023. The Supreme Court has never decided the latter issue.[25] And although several district court judges in this circuit have interpreted certain Third Circuit opinions[26] as recognizing an implied cause of action for damages under the Fourteenth Amendment,[27] two recent opinions written by Judge Rosenn indicate that the Third Circuit also has not yet decided the issue.[28] In *Gagliardi v. Flint, supra,* the majority held that the cases referred to in note 26, *supra,* dealt only with the district court's jurisdiction, and that none of them "even purported to decide whether a damage remedy may be implied from the four-

---

**22.** The Court could hear an action under 42 U.S.C. § 1983 or § 1985 against the defendants in their official capacity for injunctive relief, but the Complaint requests damages only. *See Rochester v. White,* 503 F.2d 263, 266–67 (C.A. 3, 1974); *Patton v. Conrad Area School District,* 388 F.Supp. 410, 418 (D.Del.1975); *O'Brien v. Galloway,* 362 F.Supp. 901, 905 (D.Del.1970).

**23.** Docket Item 85. Section 1331(a) provides:

"(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

**24.** Docket Item 1, pars. 1–3, 30, 33; *see* Docket Item 108, pp. 22–23.

**25.** *Mount Healthy School District Board of Education,* 429 U.S. 274, 279, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The Court expressly has left the question open on several occasions. *E. g., Id.; Aldinger v. Howard,* 427 U.S. 1, 4 n.3, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); *City of Kenosha v. Bruno,* 412 U.S. 507, 514–15, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1976).

**26.** *See Rotolo v. Borough of Charleroi,* 532 F.2d 920 (C.A. 3, 1976) (per curiam); *McCullogh v. Redevelopment Authority of Wilkes-Barre,* 522 F.2d 858 (C.A. 3, 1975); *Skehan v. Bloomsburg State College,* 501 F.2d 31 (C.A. 3), *vacated on other grounds,* 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975).

**27.** *See, e. g., Sedule v. Capital School District,* 425 F.Supp. 552, 555 n.3 (D.Del.1976); *Redding v. Medica,* 402 F.Supp. 1260, 1261 (W.D.Pa. 1975); *Connell v. City of Wilmington,* Civ.No. 76–182 (D.Del., filed May 3, 1977) (unpublished opinion). *See generally Gagliardi v. Flint, supra,* 564 F.2d at 117–118 (Gibbons, J., concurring) and cases cited therein. *But see Crosley v. Davis,* 426 F.Supp. 389 (E.D.Pa.1977); *Pitrone v. Mercadante,* 420 F.Supp. 1384 (E.D.Pa. 1976).

**28.** *Gagliardi v. Flint, supra,* 564 F.2d at 115 n.3; *Mahone v. Waddle, supra,* 564 F.2d at 1022–1025; *accord id.* at 1056–1058 (Garth, J., dissenting and concurring). Judge Gibbons in a concurring opinion in *Gagliardi* argued that the cases cited in note 26, *supra,* do hold that "a Fourteenth Amendment cause of action could be asserted against municipal corporations." 564 F.2d at 1024–1025.

teenth amendment." 564 F.2d at 115 n.3. Finally, the Court notes that other Circuits have reached conflicting decisions on this issue.[29] The case *sub judice* squarely raises the issue whether an implied private right of action for damages against a municipality exists under the Fourteenth Amendment. Given the absence of controlling authority, the Court, after reviewing much of the case law and commentary, concludes that it would be inappropriate to imply the proposed cause of action. Because the subject has received extensive treatment recently by the courts in this circuit,[30] this Court will not retrace the background of the issue.

■ The Supreme Court established the methodology for analyzing such questions when it created a private right of action for damages against federal officers who violated the Fourth Amendment in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

"When there is a request for the judicial creation of a supplemental damages remedy arising directly under a constitutional provision, *Bivens* . . . teaches that a federal court should proceed with caution. *Compare Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). It should carefully assess the existing remedies and consider the extent to which there has been a Congressional or other determination that the supplemental remedy should not be available." *Kostka v. Hogg*, 560 F.2d 37 at 42 (C.A. 1, 1977).

Concerning the first inquiry, the adequacy of existing remedies, the reasons for imply-

ing a cause of action for damages against a municipality under the Fourteenth Amendment are much less compelling than those in *Bivens*. *See Pitrone v. Mercadante, supra*, 420 F.Supp. at 1389. The only alternative remedy available in *Bivens* was a state tort law action against the federal officers, which the Court found inadequate because (1) state tort law might not protect all the interests protected by the Fourth Amendment and (2) state law could not "undertake to limit the extent to which federal authority can be exercised." *Bivens v. Six Unknown Named Agents, supra*, 403 U.S. at 390–95, 91 S.Ct. at 2004; *see Kostka v. Hogg, supra*, 560 F.2d at 41–42. In the instant case, 42 U.S.C. § 1983 represents the alternative remedy. Section 1983, which protects the same interests as are protected by the Fourteenth Amendment, makes municipal officials personally liable for any conduct on their part which violates the civil rights of others. The principal advantage of implying a damages remedy against a municipality directly under the Fourteenth Amendment would be the assurance of a financially responsible defendant.[31] Clearly, the remedy provided by Section 1983 is more adequate than the alternative remedy available to the plaintiffs in *Bivens*. *See Mahone v. Waddle, supra*, 564 F.2d at 1060–1061 (Garth, J., concurring and dissenting); *Kostka v. Hogg, supra*, 560 F.2d at 41–42.

■ On the second question, the appropriateness of implying a cause of action directly under the Fourth Amendment, the Court in *Bivens* stated: "The present case involves no special factors counselling hesitation in the absence of affirmative action by Congress." 403 U.S. at 396, 91 S.Ct. at

29. *Compare Kostka v. Hogg*, 560 F.2d 37 (C.A. 1, 1977) (refusing to imply a cause of action for damages) *with Brault v. Town of Milton*, 527 F.2d 730, 732–35 (C.A. 2), *vacated on other grounds*, 527 F.2d 730, 736 (1976) (en banc) and *Hostrop v. Board of Junior College*, 523 F.2d 569, 576–77 (C.A. 7, 1975). For a compilation of the cases and commentary on this issue, *see Mahone v. Waddle, supra*, 564 F.2d at 1058 n.37 (Garth, J., concurring and dissenting).

30. *E. g., Mahone v. Waddle, supra*, 564 F.2d at 1056–1061 (Garth J., concurring and dissent-

ing); *Gagliardi v. Flint, supra*, 564 F.2d at 117–126 (Gibbons, J., concurring); *Crosley v. Davis, supra*, 426 F.Supp. at 394–97; *Pitrone v. Mercadante, supra*, 420 F.Supp. at 1388–91.

31. Several other less tangible benefits of imposing liability on municipalities for civil rights violations by their employees are suggested in Note, *Damages Remedies Against Municipalities for Constitutional Violations*, 89 Harv.L. Rev. 922, 923 (1976).

2004. The same cannot be said in this case. Judge Garth in a separate opinion in *Mahone v. Waddle*, identified three factors, besides a less compelling need, which "counsel hesitation" in the judicial creation of a Fourteenth Amendment action for damages against a municipality. 564 F.2d at 1058–1061. First, the Fourteenth Amendment contains an enforcement provision, Section five,[32] which clearly indicates "that the framers of the Fourteenth Amendment intended to confer upon *Congress*—not the courts—the primary responsibility for developing appropriate measures to enforce the Amendment." *Id.* (emphasis in original). In sharp contrast, "[n]one of the first eight Amendments contains a similar provision." *Id.*[33] Although Section five does not preclude the courts from developing remedies to enforce the Fourteenth Amendment,[34] it "counsels strongly against judicial alteration of the scheme of enforcement developed by Congress." *Id.* at 1059.

The second factor "counselling hesitation" against implying a cause of action here is the fact that, although Congress, by enacting Section 1983, created a damage remedy for violations of Fourteenth Amendment rights, it chose to exempt municipalities from liability under that section. *Monroe v. Pape, supra.* Related to this is the third factor, namely, "the failure of Congress to bring municipalities within the scope of 42 U.S.C. § 1983 during the sixteen years since *Monroe v. Pape* was decided." *Mahone v. Waddle, supra*, 564 F.2d at 1059 (Garth, J., concurring and dissenting). This failure is particularly noteworthy in light of the "sustained and vigorous" legislative campaign to subject municipalities to liability under Section 1983. *Id.* at 1059–1060.

Having found (1) that the need for an implied cause of action for damages against a municipality for the constitutional torts of its employees is not serious given the remedies provided under 42 U.S.C. § 1983, and (2) that it would be inconsistent with the spirit of Section five of the Fourteenth Amendment to imply a damage action against a municipality in situations in which Congress, at least implicitly, refused to do so,[35] this Court concludes that the Fourteenth Amendment does not provide the plaintiff Blake with a cause of action against defendant Delaware City for damages. Further, because recovery ultimately would be from the Delaware City treasury, the claims asserted under the Fourteenth Amendment and 28 U.S.C. § 1331 against the municipal defendants in their official capacity must also be dismissed for failure to state a cause of action.

Having dismissed the federal claims against Delaware City and all the municipal defendants in their official capacity, it is necessary to consider one other preliminary matter concerning the federal claims against the defendants in their individual capacity. The Complaint alleges a conspiracy among the defendants to deprive Blake of his constitutional rights and seeks relief under 42 U.S.C. §§ 1983 and 1985(3). To make out a cause of action under Section 1985(3) the plaintiff must allege "some racial, or . . . otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Because Blake

---

**32.** Section five of the Fourteenth Amendment provides: "Congress shall have the power to enforce, by appropriate legislation, the provisions of this article."

**33.** The Third Circuit has implied causes of action directly under the First Amendment, *Paton v. LaPrade*, 524 F.2d 862 (C.A. 3, 1975), and the Fifth Amendment, *United States ex rel. Moore v. Koelzer*, 457 F.2d 892 (C.A. 3, 1972).

**34.** *See Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Gagliardi v. Flint*, 564 F.2d at 117 (Gibbons, J., concurring).

**35.** *Mahone v. Waddle, supra*, 564 F.2d at 1060 (Garth, J., concurring and dissenting); *cf. Aldinger v. Howard*, 427 U.S. 1, 15–19, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1977) (refusal to exercise pendent party jurisdiction over municipality when § 1983 was basis for federal claim); *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973) (refusal to use § 1988 to circumvent *Monroe v. Pape*).

has not alleged any class-based discriminatory motivation, he has not stated a cause of action cognizable under 42 U.S.C. § 1985(3). *Id.; see Hazo v. Geltz*, 537 F.2d 747, 749 (C.A. 3, 1976); *McNally v. Pulitzer Publishing Co.*, 532 F.2d 69, 74–75 (C.A. 8, 1976). This conclusion does not require dismissal of the conspiracy claims, however; for the Court considers the allegations in the Complaint sufficient to support a cause of action for conspiracy under Section 1983. Section 1983 provides a remedy for all violations of rights secured by the Constitution, not only those stemming from class-based discrimination. *Hahn v. Sargent*, 388 F.Supp. 445, 450 (D.Mass.), *aff'd*, 523 F.2d 461 (C.A. 1, 1975) *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). And several courts have recognized civil causes of action for conspiracy based on 42 U.S.C. § 1983. *See, e. g., Hazo v. Geltz, supra*, 537 F.2d at 749; *Mizell v. North Broward Hospital District*, 427 F.2d 468, 473 (C.A. 5, 1970); *Hoffman v. Halden*, 268 F.2d 280, 292–93 (C.A. 9, 1959).

### B. *Statute of Limitations*

The defendants contend that the statute of limitations has run with respect to any claims for damages based on the adoption of Ordinance No. 2007 in 1971. As noted in *Gordenstein v. University of Delaware*, 381 F.Supp. 718, 727 (D.Del.1974):

"Congress has not prescribed a limitations period for the commencement of suits under [42 U.S.C.] Section 1983. This Court must therefore observe the limitations period governing analogous causes of action under state law. *Howell v. Cataldi*, 464 F.2d 272 (3d Cir. 1972)."

Blake seeks to recover damages for injuries to his person and to his personal property. The parties agree that the applicable statutes of limitations are 10 Del.C. §§ 8107 and 8119,[36] both of which provide for a two year limitations period.

Blake instituted this action on March 10, 1976. The actions upon which Blake bases his claims for damages are: (1) the adoption of Ordinance 2007 on February 8, 1971, (2) his arrest and the seizure of his cars on June 29, 1974, and (3) the defendants' failure to return his cars after January 15, 1975, when a Common Pleas Court held Ordinance 2007 unconstitutional. The statute of limitations clearly has not run on the last two of these events, each of which occurred less than two years before the plaintiff instituted this action. To determine whether the claims based on the adoption of the ordinance are time barred, it is necessary to determine when Blake's cause of action thereon accrued. Blake contends that the statute of limitations did not begin to run until the ordinance was declared unconstitutional on January 15, 1975, or, alternatively, until the ordinance was enforced against him on June 29, 1974. Blake alleges that the defendants enacted Ordinance 2007 in 1971 for the purpose of "getting" him and putting him out of business.[37] He sued the defendants both as individual tortfeasors and as members of a conspiracy. The individual and conspiracy claims are analyzed separately below.

Individual claims have been asserted against defendants Cruchley, Gannon, Janiszewski, and Harrison for adopting Ordinance 2007. In Delaware,

"Statute of limitations begin to run when proper parties are in existence capable of suing and being sued, and a cause of action exists capable of being sued on forthwith." *Keller v. President, Directors and Company of Farmers Bank*, 2

---

**36.** Docket Item 107, p. 14; Docket Item 108, pp. 18–19. Section 8107 covers actions to recover damages for injury to personal property; Section 8119 covers actions "for the recovery of damages upon a claim for alleged personal injuries." The Court notes that, at least with respect to the civil conspiracy claims for injury to personal property, the three year period of limitations provided for in 10 Del.C. § 8106 might apply. *See Freedman v. Beneficial*

*Corp.*, 406 F.Supp. 917, 924 (D.Del.1975). It is unnecessary to resolve that question, however, because the events upon which this suit is based all occurred either less than two years before the suit was filed or more than three years before that date.

**37.** Docket Item 1, par. 14; Docket Item 108, p. 21.

Terry 471, 41 Del. 471, 476, 24 A.2d 539, 541 (Super.Ct. 1942).

If Blake's allegation that the ordinance was adopted to put him out of business were true, he could have sought injunctive and declaratory relief in the state courts immediately after the ordinance became effective in 1971.[38] Therefore, the Court concludes that the individual causes of action based on the enactment of Ordinance 2007 are barred by the statute of limitations.

■ Regarding the claim that the defendants conspired to violate Blake's constitutional rights, the applicable rule under Delaware law is:

"[T]he statute of limitations in a civil conspiracy runs from the time of the overt act which is alleged to have caused the damages complained of even though damages continue to flow indefinitely as a result of such act."

*Freedman v. Beneficial Corp.*, supra, at 924; see *Henis v. Compania Agricola de Guatemala*, 116 F.Supp. 223, 226 (D.Del.1953); *Park-In Theatres, Inc. v. Paramount-Richards Theatres, Inc.*, 90 F.Supp. 727, 729 (D.Del.1950); *Glassberg v. Boyd*, 35 Del.Ch. 293, 116 A.2d 711, 717 (1955). Applying the rule to this case, the Court concludes that the statute of limitations precludes the recovery under a conspiracy theory of damages caused by the enactment of the ordinance, as opposed to its enforcement.

### C. *Legislative Immunity*

Blake alleges that defendant Tugend was the mayor and defendants Press, Gicker, Gannon, Harrison and McCarthy were council members when Ordinance 2007 was enforced against him.[39] These defendants, together with the defendants who adopted the ordinance, contend they are immune from liability to the plaintiff under the doctrine of legislative immunity.

■ The Supreme Court reviewed the various types of immunity from liability for damages afforded to governmental officials under 42 U.S.C. § 1983 in *Wood v. Strickland*, 420 U.S. 308, 316–18, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). Concerning legislative immunity, the Court noted that in *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), it had found

" . . . no basis for believing that Congress intended [Section 1983] to eliminate the traditional immunity of legislators from civil liability for acts done within their sphere of legislative action. That immunity, 'so well grounded in history and reason . . . ' *id.*, at 376, 71 S.Ct. 783, *was absolute and consequently did not depend upon the motivations of the legislators.*" 420 U.S. at 317, 95 S.Ct. at 998 (emphasis supplied).[40]

Despite the plain meaning of the language emphasized, Blake contends that a legislator is not immune from liability if he

"knew, or reasonably should have known, that the action he took within his sphere of official responsibility would violate the Constitutional rights of a person, or if he

---

**38.** The record indicates that the plaintiff believed he was being harassed by Delaware City officials when the Council adopted Ordinance 2007. *See* Blake Dept., Docket Item 35, pp. 30–33; Docket Item 73, answer 37.

**39.** Complaint, Docket Item 1, par. 19. The defendants denied that McCarthy was a member of the Council in June 1974. Docket Item 5, par. 6. All five of the alleged council members stated that McCarthy did not join the Council until October 1974. Answers to Plaintiff's Interrogatories, Docket Item 43, Answers 3, 5. In response to interrogatories directed to him by the defendants, however, Blake renewed his allegation that McCarthy conspired with the other council members in June 1974 to enforce Ordinance 2007 against him. Docket Item 73, Answer 37. For purposes of the pend-

ing summary judgment motion, the Court must consider the evidence and pleadings in the light most favorable to the plaintiff and assume McCarthy was a council member when Blake was arrested. *Long v. Parker*, 390 F.2d 816, 821 (C.A. 3, 1968).

**40.** In Delaware, legislators also enjoy absolute immunity from personal liability at common law for acts performed within the scope of their legislative duties. *See Shellburne, Inc. v. New Castle County*, 293 F.Supp. 237, 242–43 (D.Del.1968); *Shellburne, Inc. v. Roberts*, 43 Del.Ch. 485, 238 A.2d 331 (Del.Sup.1967). Therefore, unless otherwise indicated, the analysis of legislative immunity as a defense to the plaintiff's federal claims applies equally to the pendent state law claim.

took the action with the malicious intent to cause deprivation of such Constitutional rights." [41]

To support his position the plaintiff cites only *Wood v. Strickland, supra.* Unfortunately, the plaintiff misapprehends the meaning of that case; the Court in *Wood v. Strickland* specifically limited the application of the qualified immunity referred to by the plaintiff to officers of the *executive* branch of government. 420 U.S. at 317–18, 95 S.Ct. 992.

▇ Blake also cites *Cohen v. Maloney,* 428 F.Supp. 1278 (D.Del.1977), as supporting his contention that legislators enjoy only a qualified immunity. In *Cohen v. Maloney,* Judge Stapleton recognized two situations where the doctrine of legislative immunity would not protect legislators: (1) where the activities giving rise to the suit are not legitimate legislative activities, and (2) "where no agents [of the legislature] participated in the challenged action and no other remedy was available." 428 F.Supp. at 1281–82. The latter of these two exceptions clearly does not apply to this case. As to the former, the plaintiff has failed to allege that the defendant council members, either collectively or individually, did anything more than bring occasional complaints they received from residents about "junk cars" to the attention of the police department. Indeed, the plaintiff appears to argue that merely because these defendants were on the Council in June 1974, they are responsible for his arrest.[42] In short, there is nothing in the records showing that any of the defendant council members, other than former Mayor Tugend, exceeded the scope of their *legislative* authority with respect to any actions which affected Blake.

Accordingly, the Court will enter summary judgment in favor of those defendants with respect to the claims asserted against them for their individual actions.

▇ Further, the Court will grant summary judgment for defendants Cruchley, Gannon, Janiszewski, Harrison, Press, Gicker, and McCarthy on the plaintiff's conspiracy claims, because the facts alleged against them, taken in the light most favorable to the plaintiff, fail to establish their participation in the claimed conspiracy. In *LaRouche v. City of New York,* 369 F.Supp. 565, 567 (S.D.N.Y.1974), the court held:

"A complaint under § 1983 must set forth more than vague, conclusory allegations charging a defendant's participation in a conspiracy. Plaintiffs must 'allege with some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy.'" (footnote omitted).

*Accord, Hickey v. New Castle County,* 428 F.Supp. 606, 611 (D.Del.1977). Here, the only overt acts which the above-named defendants are alleged to have engaged in were actions performed within the scope of their legislative authority.[43] It would be anomalous to subject public officials to potential liability for civil conspiracy under 42 U.S.C. § 1983 for the performance of acts which "are exactly the kind of discretionary conduct which must be taken by public officials, unfettered by the fear of harassing or retributory lawsuits." *Safeguard Mutual Insurance Co. v. Miller,* 333 F.Supp. 822 (E.D.Pa.1971). To sustain the conspiracy claims against these defendants on the record here would undermine the policy for

---

**41.** Docket Item 108, p. 30.

**42.** Docket Item 108, p. 9. Defendant Gicker joined the Council two months before the arrest, and he testified at his deposition that he knew nothing of the enforcement of Ordinance 2007 until after Blake's arrest. Gicker Dept., Docket Item 89, pp. 3, 19–23.

**43.** The plaintiff has alleged that in 1969 defendant Harrison had him "falsely arrested" for having a broken water pipe and later assaulted Blake at the Delaware City Recreation Club.

Supplemental answers to Interrogatories Directed to Plaintiff, Docket Item 73, Answer 37. Blake also alleged that several years ago defendant Cruchley drove away one of Blake's customers by making "derogatory and obscene remarks." *Id.* Besides being barred by the statute of limitations, these incidents do not demonstrate that the defendants acted other than as independent actors and are too remote in time to evidence continued participation by Harrison and Cruchley in an ongoing conspiracy.

granting legislative immunity in the first place.

■ Former Mayor Tugend played a more active role in enforcing Ordinance 2007, however. She has admitted instructing Police Chief Griffin and Sergeant Denick to enforce the ordinance in May 1974.[44] The defendants argue that, to the extent former Mayor Tugend's action was nonlegislative, it is *de minimis* and does not rise to the level of a Civil Rights Act violation. This contention raises a disputed issue of material fact which precludes this Court from awarding defendant Tugend summary judgment on the basis of legislative immunity.

### D. *Official Immunity*

■ Although former Mayor Tugend does not enjoy absolute immunity, she is entitled to a "qualified immunity" from personal liability under 42 U.S.C. § 1983 for the actions she took in her executive capacity. *Scheuer v. Rhodes*, 416 U.S. 232, 247, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Four other defendants arguably are entitled to the same type immunity. They are the three members of the Police Advisory Board ("PAB"),[45] viz., defendants Foraker, Harding and Boyer, and Police Chief Griffin. To avoid liability under the qualified immunity established in *Scheuer* a defendant official must show: (1) that he acted within the scope of his authority; (2) that he acted in good faith; and (3) that his actions were reasonable "at the time and in light of all the circumstances." *Scheuer v. Rhodes, su-*

*pra,* 416 U.S. at 247–48, 94 S.Ct. at 1692; *accord, Wood v. Strickland, supra,* 420 U.S. at 318, 95 S.Ct. 992. The Court will not grant summary judgment on the claims against any of the defendants eligible for official immunity, because genuine issues of material fact exist with respect to the last two of the three criteria for immunity as to each of those defendants.[46]

For example, it is undisputed that defendants Foraker and Harding accompanied Sergeant Denick on a tour of Delaware City in May 1974 in order to compile a list of the abandoned motor vehicles and the property owners in violation of Ordinance 2007.[47] They identified forty-nine cars, including thirteen located on Blake's property.[48] Blake alleges that defendants Foraker and Harding acted in bad faith and with a malicious intent to "get" him. Similarly, the plaintiff alleges that Police Chief Griffin and former Mayor Tugend acted in bad faith when they decided to enforce Ordinance 2007 and, ultimately, to have Blake arrested.

Although a stronger argument has been made for summary judgment in favor of the third PAB member, defendant Boyer, it must be rejected also. Boyer testified at his deposition that he knew nothing about the efforts to enforce Ordinance 2007 until after Blake was arrested.[49] The plaintiff, however, contends that Boyer and the other PAB members "specifically urged enforcement of the statute in May 1974."[50] To support his allegation Blake cites only the

---

**44.** Docket Item 48, Answer 12.

**45.** The PAB acts as a liaison between the Mayor and Council, the Police Department and the public, advising each group of the concerns of the others regarding police matters. Docket Items 44 & 45, Answer 3; Docket Item 48, Answer 9. The members are appointed by the Mayor subject to Council approval. Docket Item 44, answer 2.

Although it is impossible to characterize the PAB's function as either legislative or executive, it seems most accurate to describe the Board as a quasi-executive body intended to foster more effective law enforcement.

**46.** Defendants' argument that the members of the PAB did not act "under color of state law"

as required by 42 U.S.C. § 1983 (Docket Item 107, p. 17) is totally without merit. *See generally* C. Antieau, *Federal Civil Rights Acts* § 33 (1971).

**47.** *See* Docket Item 107, p. 7; Denick Dept., Docket Item 104, pp. 7–8.

**48.** Docket Item 107, p. 7; Denick Dept., Docket Item 104, p. 6.

**49.** Docket Item 91, pp. 4–5, 11. Baker testified that he never even attended a meeting of the PAB in 1974, because he was working two jobs at the time. *Id.* p. 5.

**50.** Docket Item 108, p. 9.

following statement by former Mayor Tugend in response to an interrogatory:[51]

"Myself, Chief Griffin and the Police Advisory Board asked Sgt. Denick to proceed against the forty or so junk cars on his list of violators. I believe plaintiff's junk cars were on the list."

Because the record contains no other evidence on this point and the evidence, for purposes of this summary judgment motion, must be considered in the light most favorable to the plaintiff,[52] the Court assumes that Boyer recommended enforcement of the ordinance. Since Blake further alleges that Boyer acted in bad faith, the Court must deny the motion for summary judgment in Boyer's favor.

E. *Policeman's Immunity*

Finally, the municipal defendants correctly contend that under Section 1983, Police Chief Griffin and Sergeant Denick are entitled to policeman's immunity, that is, the defense of good faith and probable cause. *See Pierson v. Ray*, 386 U.S. 547, 557, 87 S.Ct. 1213, 18 L.Ed.2d 283 (1967).[53] Once again, however, the plaintiff's allegations of bad faith preclude summary judgment.

Although defendants Baker and DeLeo assert a defense of absolute immunity,[54] they enjoy only a qualified immunity roughly equivalent to that available to the defendant police officers. *See* W. Prosser, *The Law of Torts* § 26, p. 133 & nn. 90–91 (4th ed. 1971). As private citizens who assisted a police officer, at his request, in accomplishing a seizure of personal property incident to an arrest, Baker and DeLeo are immune from liability under Section 1983 if they acted in good faith. *See id.*

Since the plaintiff alleges these defendants acted in bad faith, their motion for summary judgment must be denied.

Defendants Baker and DeLeo also contend that they acted at all relevant times as independent contractors for Delaware City, and not under color of law.[55] The Court disagrees. In seizing the cars pursuant to an agreement with the police, Baker and DeLeo carried out a function which the police were authorized by law to perform[56] and, thus, acted under color of law. *See Tedeschi v. Blackwood*, 410 F.Supp. 34, 41–42 (D.Conn.1976) (three judge court); *DeCarlo v. Joseph Horne & Co.*, 251 F.Supp. 935 (W.D.Pa.1966). Further, because they allegedly conspired with city officials to violate Blake's civil rights, the fact that Baker and DeLeo are not state officers is no defense to a Section 1983 action. *See Adickes v. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Phillips v. Trello*, 502 F.2d 1000, 1004 (C.A. 3, 1974).

III. *Pendent State Law Claim*

In addition to asserting claims under federal law, Blake has invoked the Court's pendent jurisdiction to hear a state law claim for conversion of his personal property.[57] There are two prerequisites for the exercise of pendent jurisdiction. *United ed Mine Workers of America v. Gibbs*, 383 U.S. 715, 725–27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). First, the underlying federal claim must be sufficiently substantial to support federal jurisdiction. *Id.* at 725, 86 S.Ct. 1130. As indicated in Part II. A, *supra*, this Court, by virtue of Blake's claim for damages under the Fourteenth Amend-

---

**51.** Docket Item 48, Answer 15; defendant Tugend also named Boyer as being a member of the PAB at that time. *Id.* Answer 8.

**52.** *See Long v. Parker*, 390 F.2d 816, 821 (C.A. 3, 1968).

**53.** Docket Item 107, p. 17. The courts generally characterize the duties of law enforcement as nondiscretionary and therefore deny policemen the broader immunity afforded executive officials with discretionary duties under *Scheuer v. Rhodes, supra*, and *Wood v. Strick-*

*land, supra. See* McCormack and Kirkpatrick, *Immunities of State Officials Under Section 1983*, 8 Rut.-Cam.L.J. 65, 95 (1976).

**54.** Docket Item 9, Affirmative Defense 2.

**55.** *Id.*, Affirmative Defense 4.

**56.** Ordinance 2007, Section 5 (Docket Item 107A, p. 1).

**57.** Docket Item 1, par. 51.

ment and 28 U.S.C. § 1331 has subject matter jurisdiction with respect to all the defendants in both their individual and official capacities. *Gagliardi v. Flint, supra,* 564 F.2d at 114–116; *see Hagans v. Lavine,* 415 U.S. 528, 542–43, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). Second, the state and federal claims must "derive from a common nucleus of operative fact" or be such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers v. Gibbs, supra,* 383 U.S. at 715, 86 S.Ct. at 1138. Reducing the conversion claim to its simplest form, the plaintiff claims that, regardless of whether the seizure of his cars on June 29, 1974 was tortious, the defendants converted those cars by failing to return them after the state courts held Ordinance 2007 unconstitutional.[58] Because the claim relates only to the defendants' failure to return the cars in 1975, the defendants argue that there is no "common nucleus of operative facts" shared by the conversion claim and the federal claims, which are based primarily on the June 29, 1974 arrest and seizure.[59] Assuming this to be true, the Court nonetheless finds the facts underlying the conversion claim sufficiently related to the plaintiff's other claims that one would expect the state and federal law claims to be tried together in a single judicial proceeding. *Id.* at 725 & n.13, 86 S.Ct. 1130. Therefore, the Court has the *power* to exercise pendent jurisdiction over the conversion claim. *Id.* at 725–27, 86 S.Ct. 1130.

Pendent jurisdiction, however, is a doctrine of discretion; the Court may decline to hear a pendent state claim based on considerations of "judicial economy, convenience and fairness to the litigants." *Id.* at 726, 86 S.Ct. at 1139. Because the federal claims against the defendant Delaware City and the individual defendants in their official capacities have been dismissed, the Court will not exercise its pendent jurisdiction to hear the state law claims asserted against those defendants. *United Mine Workers of America v. Gibbs, supra,* 383 U.S. at 726, 86 S.Ct. 1130.[60] An additional factor prompting dismissal of the pendent claims against Delaware City and its officers in their official capacity is the Court's desire to avoid an unnecessary decision on what constitutes a waiver of sovereign immunity by a municipality under Delaware law—an issue which has not been definitively settled by the state courts.[61]

58. Docket Item 1, pars. 25, 47, 48, 49.

59. Docket Item 109, p. 16.

60. In *Pitrone v. Mercadante,* 420 F.Supp. 1384, 1391 (E.D.Pa.1976), the court dismissed the pendent claims against a township in circumstances identical to those present in this case. The court in *Pitrone* held that *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), barred it from adjudicating any state law claims against the township, after it had dismissed the federal claims against the township. 420 F.Supp. at 1391. Although this Court also has decided to dismiss the pendent claims against a municipality, we do not think *Aldinger v. Howard, supra,* mandates dismissal. The issue in *Aldinger* was whether a court should exercise "pendent party" jurisdiction "over a party as to whom no independent basis of federal jurisdiction exists." 427 U.S. at 2–3, 96 S.Ct. at 2415. The plaintiff in *Aldinger* did not assert a cause of action directly under the Fourteenth Amendment. *Id.* at 4 n.3, 96 S.Ct. 2413. *Compare id. with Gagliardi v. Flint, supra, and Rosado v. Wyman,* 397 U.S. 397, 405, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).

61. The trend of the law in Delaware is to eliminate sovereign immunity. *Pajewski v. Perry,* 363 A.2d 429, 434 (Del.1976). The Delaware City Charter (58 Del.Laws Ch. 588) authorizes the City to "sue and be sued, . . . defend and be defended," and grants it "all powers which, under the Constitution of State, it would be competent for the General Assembly to grant by specific enumeration." The Delaware Courts have held that such language, when it pertains to counties or other state agencies, constitutes a waiver of sovereign immunity. *Wilmington Housing Authority v. Williamson,* 228 A.2d 782, 786–88 (Del.1967); *Varity Builders, Inc. v. Polikoff,* 305 A.2d 618, 619 (Del. 1973). To date, however, the courts have not extended the logic of those cases to cover similar language in the charters of municipalities. *Compare Eastern Union Co. v. Moffatt Tunnel Improvement Dist.,* 6 W.W.Harr., 488, 36 Del. 488, 178 A. 864, 869 (Del.Super.1935) *with Wilmington Housing Authority v. Williamson, supra,* 228 A.2d at 788.

 Several factors warrant the exercise of pendent jurisdiction over the claims against the defendants in their individual capacities, however. Fairness is one factor; for if the Court were to dismiss the conversion claim, the statute of limitations might bar the plaintiff from asserting it in state court.[62] Although it may not be determinative, the unavailability of another judicial forum weighs in favor of the exercise of pendent jurisdiction. *See* Hart & Wechsler's *The Federal Courts and the Federal System* 925 (2d ed. 1973). In addition, consideration of the state and federal law claims in a single proceeding will conserve judicial energy and avoid duplicitous litigation. On the other side of the scale, the conversion claim does not appear to predominate over the federal claims or to raise difficult or novel questions of state law. Unlike the situation in *Aiello v. City of Wilmington*, 426 F.Supp. 1272, 1295 (D.Del. 1976), upon which the defendants rely in urging dismissal of the conversion claim, the issues presented by the state claims against the defendants in this case in their individual capacities do not necessitate resolution of "knotty issues" of state law with little guidance from the state courts. Finally, the risk of jury confusion is negligible.

 To minimize the potential for jury confusion, the parameters of the conversion claim are discussed below. At the outset, the Court notes that if the jury should find the defendants, or any of them, violated the plaintiff's constitutional rights and either acted in bad faith or were otherwise not immune from liability, it would be unnecessary for them to consider the state law claim for conversion. This conclusion is based on the assumption that the damages for a violation of Section 1983 in this case would subsume any damages recoverable for conversion.[63] Inversely, a finding that the defendants had not violated Blake's civil rights or that they had acted in good faith would not preclude the imposition of liability for the conversion of his cars. Bad faith or intent to "get" Blake do not have to be shown to establish conversion; the plaintiff must prove only that the defendants intended to exercise dominion and control over the goods inconsistent with Blake's rights in them. W. Prosser, *The Law of Torts* § 15, at 83 (3d ed. 1964). Good faith is not a defense to conversion. *See id.*; 1 F. Harper & F. James, *The Law of Torts* § 2.10, at 126–27 (1st ed. 1956).[64] Defendants Baker and DeLeo admitted that the cars have not been returned.[65] Genuine issues of material fact exist, however, with respect to who, if anyone, is liable for the defendants' inability to return the cars to Blake[66] and concerning the level of damages. Therefore, the Court must deny the defendants motions for summary judgment on the conversion claim.

---

**62.** An action for conversion is subject to a three-year statute of limitations in Delaware. 10 Del.C. § 8106; *see Jackson v. Cities Service Co.*, 15 F.Supp. 397 (D.Del.1936). Although Ordinance 2007 was not held unconstitutional until January 17, 1975, Blake's cause of action for the wrongful seizure of his cars by the defendants accrued, if at all, on the date of seizure, June 29, 1974—more than three years ago. *See Mastellone v. Argo Oil Corp.*, 7 Terry 102, 46 Del. 102, 82 A.2d 379, 383–84 (Del.Sup. Ct.1951); *Wise v. Delaware Steeplechase & Race Ass'n*, 28 Del.Ch. 532, 45 A.2d 547, 552 (Del.Sup.Ct.1945).

**63.** The damages recoverable upon proof of conversion are the value of the property at the time of the conversion with interest. *Wyndham, Inc. v. Wilmington Trust Co.*, 5 Del.Super. 324, 59 A.2d 456, 459 (1948); 2 Wooley on Delaware Practice § 1521 (1906).

**64.** Although the original seizure might have been privileged as incident to an arrest (*see* Restatement Second of Torts § 265 & comment d), such a privilege would not excuse the failure to return the cars after the charges against Blake were dismissed. *See State, to Use of Henderson v. Clark*, 2 Terry 246, 41 Del. 246, 20 A.2d 127 (Del.Sup.1941); 1 Harper & James, *supra*, § 2.44, at 207–08 & n.12.

**65.** Docket Item 41; *see* note 13 *supra.*

**66.** Docket Item 5, Cross-claims 1, 2, 3 asserted by municipal defendants against Baker and DeLeo; Docket Item 9, Cross-claims 1, 2, 3 asserted by Baker and DeLeo against municipal defendants.

*Conclusion*

The plaintiff has asserted claims arising under both federal and state law against Delaware City and fifteen individual defendants in both their individual and official capacities. The defendants have moved for summary judgment and the Court has disposed of those motions as indicated below. Summary judgment on all claims will be granted in favor of defendant Delaware City and all the individual defendants, except Baker and DeLeo, to the extent they were sued in their official capacities. Summary judgment on all claims also will be granted in favor of the following defendants on the basis of legislative immunity: Cruchley, Gannon, Janiszewski, Harrison, Press, Gicker, and McCarthy. Summary judgment will be granted with respect to all claims asserted under 42 U.S.C. § 1985 and with respect to all claims for damages resulting from the adoption of Ordinance 2007 in 1971 as opposed to the enforcement of it in 1974. In all other respects defendants' motions for summary judgment will be denied.

An order will be entered in accordance with this opinion.